No. 33,593

KILIAN L. DEKAT, *Appellee,* v. AMERICAN AUTOMOBILE FIRE INSURANCE COMPANY, ST. LOUIS, MO. (*Defendant*); E. O. TALBOT, THE WESTERN CASUALTY AND SURETY COMPANY OF FORT SCOTT, and THE AMERICAN AUTOMOBILE INSURANCE COMPANY OF ST. LOUIS, MO., *Appellants.*

(73 P. 2d 1080)

Opinion filed December 11, 1937.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery, M. F. Cosgrove,* all of Topeka, and *George Clammer,* of Manhattan, for the appellants.

*Fred R. Smith, Gerald F. Smith,* both of Manhattan, *Raymond E. Smith,* of Marysville, and *William E. Smith,* of Wamego, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for damages resulting from injuries sustained in an automobile and truck collision. Plaintiff recovered judgment in the sum of $6,826.65, and the defendant Talbot, and two insurance companies, the Western Casualty and Surety Company, of Fort Scott, Kan., and the American Automobile Insurance Company, of St. Louis, Mo., have perfected appeals. Only the insurance companies have filed briefs. Originally the American Automobile *Fire* Insurance Company of St. Louis, Mo., was also a party defendant, but its policy was a combination policy with that of the American Automobile Insurance Company. A demurrer to plaintiff's evidence by the American Automobile *Fire* Insurance Company was sustained. No appeal is perfected from that ruling, and hence that defendant need no longer be considered here.

Numerous questions pertaining to the validity of the verdict have been abandoned by appellants. The verdict of the jury was against the defendant Talbot, and the two insurance companies named, for the total amount of $6,826.65. For brevity and convenience, we shall refer to the appellant insurance companies as the American and the Western.

The defendant, Talbot, operated a truck as a contract carrier of property under a license issued for that purpose by the corporation commission. On January 25, 1935, he purchased a public liability insurance policy from the American, which policy contained a maxi-

mum liability for one accident of $5,000. This policy covered a Ford V-8 truck. On April 19, 1935, he purchased a public liability insurance policy from the Western. It also contained a maximum liability for one accident of $5,000. The vehicle described in that policy was a Chevrolet truck. The accident occurred on July 11, 1935. Plaintiff's collision was with the Chevrolet truck.

Each of the policies contained similar riders or endorsements designated as form 55-H. The pertinent portion of the riders provides:

"In consideration of the premium stated in the policy to which this endorsement is attached, the *company* hereby *waives a description* of the motor *vehicles* to be insured hereunder *and agrees to pay any final judgment for personal injury, including death, resulting therefrom,* and loss of or damage to property or baggage (not including property usually designated as cargo), other than the assured's *caused by any and all motor vehicles operated by the assured pursuant to the Certificate of Public Convenience and Necessity* issued by the State Corporation Commission of Kansas *within the limits set forth in the policy."* (Italics inserted.)

These riders were attached to the policies in order to comply with the provisions of G. S. 1935, 66-1,128, the pertinent part of which reads:

"No certificate or license shall be issued by the public service commission to any 'public motor carrier of property,' 'public motor carrier of passengers,' 'contract motor carrier of property or passengers' or 'private motor carrier of property,' until and after such applicant shall have filed with, and the same has been approved by the public service commission, a liability insurance policy in some insurance company or association authorized to transact business in this state, in such reasonable sum as the commission may deem necessary *to adequately protect the interests of the public* with due regard to the number of persons and amount of property involved, which liability insurance shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such carrier." (Italics inserted.)

Among the motions antedating the verdict, the American filed a motion asking the trial court to distribute the amount of the verdict, in the event the trial court sustained the verdict against the American in any amount. The American contended, and now contends, it was not liable at all, but that in the event of any liability it was liable only for the amount of the verdict in excess of $5,000. The trial court held the American was liable, but only in the amount of the verdict in excess of $5,000 and the costs of the action. The American also contends the trial court erred in assessing the costs

against it. The Western, on the other hand, contends the trial court erred in the distribution of the verdict, and insists that the liability of the two insurance companies is joint and equal and extends to the entire verdict and costs.

Appellants frankly concede the questions presented are of first impression in this as well as in other jurisdictions. Our limited time for research has disclosed no decisions in point.

The record does not disclose when Talbot, the assured, became the owner of the Chevrolet truck. We, therefore, do not know whether he owned that truck at the time he obtained his policy from the American on the Ford V-8 truck. We do not know whether he was operating both trucks at the time of the collision on July 11, 1935.

The American first contends that the only insurance coverage must be found in the policy which specifically described the truck involved in the accident. That was the policy of the Western. This contention, if sound, means that plaintiff, the injured member of the public, for whose adequate protection the insurance requirement was enacted and the rider required, is denied full protection. Does the contract permit that conclusion and is that result in harmony with the intention of the lawmakers?

That the purpose of G. S. 1935, 66-1,128, was adequate protection of the public interest cannot be doubted. It says so in express language. Upon what ground, then, is the American relieved of responsibility? Does the fact the Chevrolet truck, owned and operated by the assured, was not described in the American policy absolve that company from liability? Does its contract answer the question? It is clear the rider was attached to its policy pursuant to the adequate-protection provision of the statute. No license to operate a truck under the certificate of public convenience and necessity could have been obtained by the insured unless the rider had been attached to the policy. The first part of the rider clearly indicates that all parties to the contract, namely, the insured, the public utilities commission, and the insurance company, contemplated the assured might possibly or even probably operate other motor vehicles than the one specifically described in its policy. In order to adequately protect the interests of the public, the public utilities commission desired to make it clear the insurer would be liable for injuries occasioned by the negligent operation of motor vehicles by the assured, although such vehicles were not specifically

described in the policy. The American was therefore required to waive and it did expressly waive the necessity for a particular description of such other vehicle or vehicles which were to be covered by its policy. In other words, if no particular vehicle had been described in the American policy at all, the contract would have covered all motor vehicles operated by Talbot, the assured, under his certificate of necessity and convenience. Does the fact that one vehicle was described in the American policy restrict the liability of the American to injuries resulting from a collision with the one vehicle particularly described in its policy? We think not. It seems to us the terms of the rider, when construed in their entirety and together with the manifest purpose of G. S. 1935, 66-1,128, compel the conclusion we have reached. Otherwise a further provision contained in the rider becomes meaningless. The American not only agreed to waive the description of other vehicles operated by the assured; the rider further provides:

"The company . . . agrees to pay any final judgment for personal injury, including death, . . . caused by *any and all motor vehicles operated by the assured pursuant to the certificate of public convenience and necessity* issued by the Kansas state corporation commission of Kansas, *within the limits set forth in the policy.*" (Italics inserted.)

It will be observed the language does not limit the liability of the American to vehicles operated by the assured and described in the policy. It expressly extends the liability to other vehicles operated by the assured, and the insurer agrees to pay any final judgment for personal injuries caused by any and all motor vehicles operated by the assured pursuant to his certificate of convenience and necessity within the limits set forth in its policy. That limit is $5,000 for one accident.

Is the liability of the American limited to that portion of the verdict in excess of $5,000? The American contends, if it is held to be liable at all, its liability is so limited because the Western policy specifically covered the Chevrolet truck involved in the accident. The Western policy, as heretofore stated, also contained a maximum coverage of $5,000 for one accident. We do not think the contention of the American is sound. True, the rider contains a restriction of liability, but that restriction does not pertain to any particular number of vehicles nor to those expressly described in the policy, but pertains only to the amount of insurance coverage. The amount of the liability is restricted only by "the limits set

forth in the policy." That limit in the American, as in the Western, is $5,000 for one accident. The American having agreed to pay any final judgment for injury caused by any and all motor vehicles operated by its assured under his certificate of convenience and necessity, to the extent of $5,000 for one accident, it follows the liability of the American was not limited to the amount of the verdict in excess of $5,000, but its liability was for an amount not exceeding $5,000.

The American directs our attention to various decisions involving "floating" or "blanket" insurance policies, and in which cases there also existed other insurance covering one or more specific articles which were embraced in the first-mentioned policies. We are reminded that in such cases it was held the insurance covering the specific articles should be first exhausted and that the blanket insurance should be utilized only to supplement the specific insurance. We are told blanket insurance is intended to supplement specific insurance on property, and attaches only when the latter ceases to cover the risk. Is this that kind of insurance? We do not think so. This insurance was in no sense intended to create secondary or supplemental coverage on motor vehicles not specifically described. The coverage was just as primary and just as full on the vehicle or vehicles not described as on those described in minutest detail. The contract constituted not only an express waiver of the particular description of other motor vehicles covered by the policy, but specifically provided that injury caused by such vehicles would be paid by the insured on any final judgment to the extent of the full limit set forth in the policy. In our view the principles upon which blanket insurance is based, if in fact applicable at all, are not controlling in the instant case.

The American further contends the trial court erred in assessing the court costs against it, and that all of the court costs should have been taxed against the Western. The contention is based on a provision in the policy of the Western whereby the Western agreed with the assured, not with the American, to pay all expenses, irrespective of the limits of liability, including all court costs taxed against it. These court costs were not taxed against the Western. The Western, according to this provision of its contract, will, of course, be liable to the assured for court costs taxed against it. We see nothing in the briefs indicating the Western is unwilling to abide by its contract. Moreover, this verdict was a joint verdict against the assured and

both insurance companies. As hereinafter directed, the total amount, including the portion of the court costs to be paid by the American, will not exceed the maximum coverage under its policy, and hence it will be required to share in the payment of costs.

There is no question about the fact that the judgment must be for the plaintiff and against the defendant Talbot, for the sum of $6,-826.65, together with interest at six percent from the date of the judgment, and for court costs. Judgment should also be rendered for plaintiff and against each of the appellant insurance companies severally for the sum of $5,000, interest and costs; provided, however, that the total recovery of plaintiff from the two insurance companies shall not exceed $6,826.65, plus interest and costs, and that as between the insurance companies each shall be liable to the other for any amount paid by it to plaintiff in excess of one half of the judgment for $6,826.65, plus interest and costs. The action is therefore remanded with directions to enter judgment in conformity with the views herein expressed.