[File No. 6894]

TECKLA MILLER, Respondent, v. STATE AUTOMOBILE INSURANCE ASSOCIATION, Appellant.

(21 NW2d 621)

Opinion filed January 22, 1946.   Rehearing denied February 28, 1946

*Lundberg & Stokes,* for appellant.

*George S. Register* and *Cox & Cox,* for respondent.

CHRISTIANSON, Ch. J. This is an action to recover upon a policy of insurance against public liability and property damage issued by the defendant upon the application of one Bert B. Hedstrom, operating as a common carrier of freight in the vicinity of Wilton, North Dakota. The policy was filed with and approved by the Board of Railroad Commissioners of this state, pursuant to the laws of the state and rules of the commissioners relating to motor vehicle transportation, incident to the issuance to said Hedstrom by the Board of Railroad Commissioners of a certificate authorizing him to operate as a carrier of freight by motor vehicle. After such certificate had been issued and while the said Hedstrom was operating thereunder, on October 17, 1939 the plaintiff, Teckla Miller, sustained personal injuries as a result of a collision between a car in which she was riding and a truck owned by the said Hedstrom and operated by his

employee in transporting freight on a public highway in the State of North Dakota. The plaintiff recovered judgment against said Hedstrom, such judgment having been rendered in the District Court of Burleigh County, North Dakota on December 19, 1940 for the total amount of $1993.30. The judgment was not paid and the defendant having informed the plaintiff that it would not pay the judgment the present action was brought.

In her complaint the plaintiff alleged that on October 17, 1938 Hedstrom was engaged in the business of transporting livestock for hire as a special motor carrier under authority conferred upon him by the Board of Railroad Commissioners of the State of North Dakota pursuant to law under special certificate No. 360; that on or about April 15, 1939 the defendant, Insurance Association, issued a policy insuring said Hedstrom against liability and property damage for a term beginning April 15, 1939 and ending April 15, 1940; that said policy insured against bodily injuries or death to any one person in any one accident in a maximum sum of $5000.00; that said policy, with the endorsements thereon, was approved by the Board of Railroad Commissioners as to form and sufficiency pursuant to the requirements of Chapter 182, Laws 1935 and Rule 12 of the Board of Railroad Commissioners' regulations and rules governing commercial motor transportation; that on December 19, 1940 the plaintiff recovered judgment against Hedstrom in the District Court of Burleigh County for personal injuries suffered by her on October 17, 1939, which injuries were found by such judgment to have been caused by the negligence of the employee of said Hedstrom who operated said truck, the amount of such judgment being $1993.30; that the defendant has refused to pay such judgment and that the same is wholly unpaid.

The defendant, in its answer, denied generally the allegations of the complaint, except as admitted in the answer and further alleged: (1) That the insurance policy on which the plaintiff seeks to recover had been cancelled and lapsed before the plaintiff was injured; (2) that the vehicle in operation by Hedstrom on October 17, 1939, which caused the injury to the plaintiff,

was not covered by the policy; (3) that the insurance policy was rendered void by virtue of certain misrepresentations contained in the application for the insurance; and (4) that at the time of the injury the said Hedstrom was not operating as a common carrier in hauling property for hire, but was hauling his own private property. The case was tried to the court without a jury upon the issues thus framed. The trial court made findings in favor of the plaintiff and ordered judgment in her favor. Judgment was entered accordingly and defendant has appealed and demanded a trial anew in this court.

During all the times involved in this controversy, the laws of this state prescribed a comprehensive and detailed plan of regulation and supervision of motor vehicles engaged in the transportation of passengers and freight for hire over the highways of the state. Laws 1933, Ch 164, as amended by Laws 1935, Ch 182. The Board of Railroad Commissioners was made the administrative and enforcement agency, and vested with the powers and charged with the duties incident to such regulation and enforcement. The statute provided that, as used therein, "the term 'person' means and includes an individual, firm, copartnership, corporation, company, association, or their lessees, trustees or receivers" (Laws 1933, Ch. 164, § 1 (a)); that "the term 'common carrier of property', . . . shall mean any person who holds himself out to the public as willing to undertake for hire to transport by motor vehicle from place to place the property of others who may choose to employ him"; that "the transportation for more than one consignor, or to more than three consignees, by motor carrier shall be prima facie evidence that such motor carrier is operating as a common carrier" (Laws 1933, Ch 164, Art II, § 2); and that "no common motor carrier of property or passengers shall operate any motor vehicle for the transportation of either persons or property for hire on any public highway in this state except in accordance with the provisions of this Act." (Laws 1933, Ch. 164, § 5).

The statute made it "unlawful for any common motor carrier to operate within this state without first having obtained from the (Railroad) Commission a certificate of public convenience

and necessity." Laws 1933, Ch. 164, Art 2, § 8. The statute further provided that:

"The commission shall in granting a certificate to any common motor carrier and in granting a permit to any contract carrier, require the owner or operator to first procure either liability and property damage insurance or a surety bond, to be approved by the commission as to the form, sufficiency, and surety thereof, and written by a company authorized to write such insurance in the State of North Dakota, in an amount to be designated by the commission. The conditions of this liability insurance or surety bond shall be such as to guarantee the payment of any loss or damage to property, or death or injury to persons, resulting from the negligence of such carrier. In any action for damages resulting from the negligence of such carrier, the insurer or surety shall not be joined as a party defendant, nor shall the fact of the ultimate liability of such insurer or surety be disclosed, or commented on to the jury; but upon final judgment the insurer or surety shall become directly liable to the owner of such judgment for the full amount thereof, but not exceeding the amount of the policy of insurance or surety bond applicable to such loss. Each insurance policy, or bond so required, shall be filed with the commission and kept in full force and effect, and upon the failure to do so the certificate or permit shall be revoked and cancelled." Laws 1933, Ch 164, § 26, amended by Laws 1935, Ch 182; ND Rev Code 1943, 49-1833.

The Board of Railroad Commissioners was "vested with power and authority," and it was made "its duty, to supervise and regulate all common motor carriers of property," and "to supervise and regulate such common motor carriers in all matters affecting the relation between such carriers and the public"; and the Board was authorized "by general order or otherwise, to prescribe rules and regulations in conformity with this Act applicable to any and all such motor carriers and do all things necessary to carry out and enforce the provisions of this Act." Laws 1933, Ch 164, § 6.

(By constitutional amendment approved June 25, 1940, it

is provided that "the Board of Railroad Commissioners shall hereafter be known as the Public Service Commission." Amendments to ND Const, Art 57; Laws 1941, pp 589, 590.)

Conformable to the statutory requirement the Board adopted certain rules and regulations which were in effect during all the times involved in this controversy. Such rules, among other things, provided:

Rule 12. "Within fifteen days after the date of Commission's order granting an application for certificate or permit, and before such certificate or permit is used, the applicant shall file with the Commission, subject to its approval, a liability and property damage insurance policy or bond, such policy or bond to have attached thereto an endorsement properly signed by an authorized resident agent and/or official of insurance or bonding company, endorsement to be in form as set forth herein covering all vehicles used or to be used by such applicant."

Rule 13. "All insurance policies or surety bonds filed with the Commission under the laws and rules governing motor transportation companies shall be so written that the same will continue in full force and effect unless and until cancelled by 15 days' written notice served on the Board of Railroad Commissioners of the State of North Dakota, the said 15 days' written notice to begin with the date notice is actually received by the Commission."

The above rule (13) then sets forth the form of endorsement of public liability and property damage required to be attached to an insurance policy. It also sets forth the form of surety bond where a bond is furnished. The endorsement set forth in the rule, and required to be attached to every insurance policy, is identical with that attached to the policy here, which is hereinafter quoted.

Hedstrom applied to the Board of Railroad Commissioners for a Certificate of Public Convenience and Necessity for the operation of a public auto transportation company to haul various types of freight, including livestock. The Board of Railroad Commissioners granted the application, and on January 12, 1938 it issued the certificate. The Board of Railroad Commissioners

later granted a renewal of the Certificate of Public Convenience and Necessity for the period from April 15, 1939 to April 15, 1940, and in conformity with the statute and the rules which the Commissioners had adopted, said Hedstrom procured from the defendant and caused to be filed with the Board of Railroad Commissioners a policy of insurance as required by the statute and the rules "to guarantee the payment of any loss or damage to property, or death or injury to persons resulting from the negligence of such carrier." The policy was duly approved by the Board of Railroad Commissioners and filed with it.

There was attached to the policy the endorsement or rider as prescribed by the rules of the Board. The insurance contract consisted of an ordinary automobile liability insurance policy with endorsements or riders attached thereto. The policy proper standing alone would not have complied at all with the above quoted provisions of the statute relating to liability insurance required to be furnished by a motor carrier. The policy contains certain provisions having no relation to the indemnity which the statute required to be furnished by and for a motor carrier. Certain provisions of the policy proper afforded protection solely for the benefit of the assured, Hedstrom, such as insurance against theft, fire and lightning. Other provisions of the policy form proper are rather at variance with the provisions of the endorsement or rider. Thus, the clauses in the insurance policy form proper relating to coverages state that the State Automobile Insurance Association agrees to insure the "assured, against such of the risks grouped under the following clauses as indicated under 'Representations of Assured' hereinafter shown." In the various clauses which follow it is stated that the Association agrees to insure against loss "due to the ownership, maintenance or use of any automobile described in this contract"; against "loss or damage to the automobile described herein"; etc. And in the paragraph of the policy headed "Representations of Assured" there is a recital of certain statements or representations by the assured, and there is a subheading entitled "Description of automobile insured." Immediately following this there are certain blank lines in which

a description of the vehicle insured may be inserted; and in the policy form proper these blanks are filled in so as to read as follows:

"Year, 1935; Trade Name, Ford; Type of Body, Tractor with semi; Engine No., 1313676; Serial No. —— No. Cyl. —— Tonnage, 1½."

The endorsement or rider attached to the policy reads as follows:

"In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby waives a description of the motor vehicles to be insured thereunder, and agrees to pay, within the limits of the policy, any final judgment for personal injury, including death, resulting therefrom, and loss or damage to property, including property of passengers while carried on the motor vehicle for shipment or in transit, caused by any and all motor vehicles operated by the insured PURSUANT to a Certificate of Public Convenience and Necessity or Permit issued to the insured by the Board of Railroad Commissioners of North Dakota in accordance with Chapter 164, Session Laws of 1933 as amended by Chapter 182 of the Session Laws of 1935. This policy does not cover injury or death to the insured or the employees of the insured or their property nor the property transported by the insured designated as cargo.

"Nothing contained in this policy shall relieve the Company from liability for accidents caused by motor vehicles operated by the insured pursuant to the Certificate of Public Convenience and Necessity or Permit; nor shall cancellation of this policy take effect unless fifteen days notice in writing shall have first been given to the Board of Railroad Commissioners of North Dakota at its office in Bismarck, North Dakota, said fifteen days notice to commence from the date the notice is actually received by said Commission.

"Nothing contained in the policy or any endorsement thereon nor the violation of any of the provisions of the policy or of any endorsement thereon by the insured shall relieve the Company of liability thereunder or the payment of any final judgment.

"Attached to and forming part of Policy No. 662309 issued by the State Automobile Insurance Association to Bert B. Hedstrom, Wilton, North Dakota."

The filing with the Board of Railroad Commissioners of a surety bond, or of a policy of insurance, providing the indemnity stipulated in the policy in this case, as extended and enlarged by the rider or endorsement attached thereto, was a condition precedent to the continuance in force of the Certificate of Public Convenience and Necessity issued to Hedstrom, for the year beginning April 15, 1939 and ending April 15, 1940. The premium on the policy was payable quarterly. Prior to the accident, premium payments had been made in full for the period up to noon of October 15, 1939. The premium payment due on or before that time was remitted by the insured on October 20, 1939, together with a penalty of $1.00 for making the payment after the due date, and the payment so transmitted, including the penalty of $1.00, was accepted by the insurer. The defendant, Insurance Association, sent notice of termination of the policy, dated October 20, 1939, which was received by the Board of Railroad Commissioners on October 23, 1939. Such notice stated in part: "said termination to become effective fifteen days from receipt of this notice so far as the jurisdiction of said Board of Railroad Commissioners applies to the operations of said trucker." Thereafter, on October 28, 1939 the Board of Railroad Commissioners received a letter from the defendant, Insurance Association, dated October 26, 1939, which said letter stated that: "Notice of the termination of policy No. 662309 issued to Bert B. Hedstrom of Wilton, North Dakota is hereby withdrawn and the policy shall remain in full force and effect the same as if notice of termination had not been sent."

As said, the insurance policy proper described a certain tractor and trailer, and this vehicle was used by the said Hedstrom in transporting property for hire under his said Certificate of Public Convenience and Necessity until some time in September, 1939 when the tractor broke down and a new motor was installed.

318

About this time the insured, Hedstrom, purchased a 1937 Ford tractor, and during the time the original (1935) tractor was being repaired the trailer was attached to the 1937 tractor and used in connection therewith for the transportation of livestock. On September 15, 1939 the assistant cashier of the First National Bank of Wilton, at the instance of Hedstrom, wrote a letter to the defendant, Insurance Association, to the effect that Hedstrom was using the 1937 tractor and would like the same insurance coverage thereon as he had had on the 1935 tractor and to have the 1937 tractor come under his policy. Repairs on the original (1935) tractor were completed on or about October 14, 1939, at which time the trailer was removed from the 1937 tractor and was again attached to the 1935 tractor. On October 14, 1939 Hedstrom drove the 1937 tractor to Fargo and there he purchased a semi-trailer for use therewith and made application for insurance on such unit to one Green, the agent of the defendant, and paid the initial premium for such insurance. At the time such application was made, the agent Green was notified by Hedstrom as to the reason for the purchase of such new insurance. According to a letter later written by the agent Green to the defendant, Insurance Association, both Hedstrom and the agent considered that the policy issued on April 15, 1939 was still in force and covered the 1935 tractor and trailer, and Hedstrom made application for a new policy on the 1937 "truck tractor," which application was forwarded to the defendant, Insurance Association. In such letter Green stated: "It wasn't my intention to cancel any policy, nor was it Mr. Hedstrom's. It was only our intention to have all his equipment insured, including the new semi-trailer and the substituted tractor."

Appellant presents as a premise for the contentions advanced and argument submitted in support thereof that the liability of the defendant herein, if any, is "contractual" and not "statutory"; that liability, if any, arises only "as a result of certain contractual obligations assumed by the defendant when it issued the policy involved in this case," including the riders or endorsements attached thereto, conformable to the requirements of the Board of Railroad Commissioners.

It is true, it is the insurance contract which gives rise to any right of recovery on the part of the plaintiff, and to any liability on the part of the defendant, that may exist in this case; but it is equally true that the contract of insurance is one which the statutes of this state require to be given "to guarantee the payment of any loss or damage to property or death or injury to persons, resulting from the negligence of" a motor carrier. The execution, and filing with the Board of Railroad Commissioners, of an insurance contract or surety bond guaranteeing such payment is a condition precedent to the issuance and delivery of a Certificate of Public Convenience and Necessity or Permit authorizing the carrier to operate. Hence, the contract to pay such loss, whether evidenced by a surety bond or by an insurance contract, is a statutory one. 9 CJ 32. It must be assumed that the parties contracted in light of the statute and that they intended to make a contract to carry out its evident purpose. 11 CJS 418; Payseno v. Padgett Co. 55 ND 154, 157, 212 NW 836. "Statutory bonds should be construed to effect the statutory purposes." 11 CJS 418.

The great purpose of the statutory requirement that an applicant for a certificate or permit to operate as a common motor carrier must furnish and file with the Board of Railroad Commissioners an indemnity contract, evidenced either by an insurance policy or a surety bond, is "to protect the interests of the public by securing compensation for injuries to persons and property from negligent operations of the carriers." Continental Baking Co. v. Woodring, 286 US 352, 365, 76 L ed 1155, 1163, 52 S Ct 595, 81 ALR 1402, 1410. See also Fidelity & C. Co. v. Jacks, 231 Ala 394, 165 So 242; Dunn v. Jones, 143 Kan 218, 53 P2d 918; Hindel v. State Farm Mut. Auto Ins. Co. (CCA 7th) 97 F2d 777; Travelers Mut. Casualty Co. v. Herman (CCA 8th) 116 F2d 151. The Legislature sought to put financial responsibility behind the operations of motor carriers to the end that those who are injured as a result of their negligent operations may be compensated. To effectuate its purpose the Legislature provided that the Board of Railroad Commissioners in granting a certificate or permit to a motor carrier must require the

carrier *"to first procure either liability or property damage insurance or a surety bond . . .* written by a company authorized to write such insurance in the State of North Dakota"; that "the conditions of this liability insurance or surety bond shall be such as to guarantee the payment of any loss or damage to property, or death or injury to persons, resulting from the negligence of such carrier"; and that the insurer or surety, as the case may be, "shall become directly liable" to the owner of any judgment that may have been recovered against the carrier for damages resulting from such negligence.

Appellant's first contention is that the insurance policy in this case lapsed for nonpayment of premium and, hence, was not in force on October 17, 1939 when the accident occurred. This contention cannot be sustained. It is contrary to both the rules of the Board of Railroad Commissioners and the provisions of the insurance contract. The rules of the Board provide that all insurance policies or surety bonds filed with the Board under the statute and the rules governing motor transportation companies "shall be so written that the same will continue in force and effect unless and until cancelled by 15 days' written notice served on the Board of Railroad Commissioners of the State of North Dakota, the said 15 days' written notice to begin with the date notice is actually received by the Commission." The endorsement or rider attached to the policy and made a part thereof provides:

"Nothing contained in this policy shall relieve the Company from liability for accidents caused by motor vehicles operated by the insured pursuant to the Certificate of Public Convenience and Necessity or Permit; nor shall cancellation of this policy take effect unless fifteen days notice in writing shall have first been given to the Board of Railroad Commissioners of North Dakota at its office in Bismarck, North Dakota, said fifteen days notice to commence from the date the notice is actually received by said Commission."

The defendant, Insurance Association, recognized the existence and validity of the provision continuing the insurance policy in force for a 15 day period after notice of cancellation had

been given and filed with the Board of Railroad Commissioners, when on October 20, 1939 it gave notice of termination of the policy. In such notice it stated: "said termination to become effective 15 days from receipt of this notice so far as the jurisdiction of said Board of Railroad Commissioners applies to the operations of said trucker." The provision that the indemnity contract shall remain in force for a 15 day period after notice of cancellation has been given and filed with the Board was obviously made so as to preclude the termination of service by a carrier on account of a summary cancellation of the contract of indemnity, and also to preclude, as far as possible, that a carrier might operate whose operations were not covered by an appropriate indemnity contract. It was clearly the intention of the Legislature that no motor carrier shall be permitted to operate unless there is in force and on file with the Board of Railroad Commissioners a contract of indemnity as prescribed by the statute. If a policy of insurance could be terminated instantly upon the giving the notice of cancellation and the filing of such notice with the Board of Railroad Commissioners, then the service to the public for the performance of which the certificate or permit was granted might be summarily interrupted with detriment to public interest, and it would be possible also that a carrier could and would continue to operate for some time without any indemnity contract being in force. Hence, it was only reasonable that provision should be made so that when an indemnity contract is given and certificate or permit issued, that such contract will remain in force for a limited period of time after notice of cancellation has been given and filed with the Board so that the Board will have time to deal with the situation that is presented.

Appellant next contends that the vehicle which caused plaintiff's injuries was not covered by the policy in suit:—

(1) It is asserted that under the provisions of the endorsement or rider attached to the policy, the policy imposed liability upon the insurer only for motor vehicles "operated by the insured *pursuant* to a Certificate of Public Convenience and

Necessity." And it is argued that the vehicle which caused plaintiff's injuries was not being operated pursuant to the Certificate of Public Convenience and Necessity but was operated in violation of the laws of the state and the rules and regulations of the Board relating to the operation of motor vehicles under such certificate.

(2) Appellant points out that the statute does not fix either the amount or the form of the surety bond or insurance policy which a common motor carrier is required to furnish; that the Board of Railroad Commissioners is granted authority to approve "the form, sufficiency and surety" of the surety bond or insurance policy and to fix the amount of such surety bond or insurance policy; that as to a carrier of the type involved here, the rules of the Board provide that, "On each motor vehicle used for the transportation of property, insurance shall be filed as follows: Public liability in the amount of $10,000; property damage $5,000, and cargo $1,000"; that under the rules of the Board and the provisions of the endorsement, which it has required to be attached to insurance policies, such policies are subject to cancellation on 15 days' notice; that the amount of insurance each carrier is required to furnish is based upon the number of vehicles operated by such carrier; that the rules provide for fees, markings, etc. as to each vehicle operated; and that the insurance policy in question here described a specific motor vehicle and that the representations of the insured, Hedstrom, as to such vehicle form part of the policy. It is asserted that the rules and regulations of the Board evidence a purpose that an insurance policy shall cover only the specific vehicle that is described in the policy and that the purpose of the Board as so evidenced by its rules and regulations and by the practices adopted by it should be considered as integrated in, or at least as having a direct bearing upon, the meaning and coverage of the insurance contract, and that the insurance contract here must be held to cover only the specific vehicle that is described in the policy.

It is true, as asserted by the defendant, that according to the

terms of the endorsement or rider attached to the policy, such policy covers only final judgments against the carrier for personal injuries and loss or damage to property "caused by any and all motor vehicles operated by the insured pursuant to a Certificate of Public Convenience and Necessity or Permit issued to the insured by the Board of Railroad Commissioners of North Dakota" in accordance with the statute. It is also true that the Certificate of Public Convenience and Necessity issued by the Board of Railroad Commissioners contains certain conditions stating that all motor vehicles operated by virtue thereof must be operated and equipped in accordance with the laws of North Dakota and the rules of the Board of Railroad Commissioners.

What is the meaning of the phrase "pursuant to" in the clause in the endorsement:—"any and all motor vehicles operated by the insured pursuant to a Certificate of Public Convenience and Necessity"? Does it have reference only to motor vehicles that are being operated in carrying on the business that the certificate authorizes the carrier to carry on, and which, also, are being operated in strict conformity with all the conditions contained in the certificate, and all the rules and regulations of the Board of Railroad Commissioners, and the laws of the state relating to the operation of motor vehicles? Or does it mean "any and all vehicles" which at the time the injury or damage is inflicted are then being operated by the carrier in the prosecution of the business which the certificate authorizes the carrier to carry on, and which, in the absence of such certificate, the carrier is forbidden to carry on? Does this provision mean that the insurer shall be liable under its bond only where injuries or damages are caused by a motor vehicle that is being operated in carrying on the business which the certificate authorizes the carrier to carry on, and which motor vehicle is being operated also in all respects in strict conformity with the conditions contained in the certificate, and with the rules and regulations of the Board of Railroad Commissioners, and the laws of the state relating to the operation of motor vehicles? Was it the intention of the parties that there should be excluded

from the policy, liability on the part of the insurer for payment of any final judgment against the carrier for injuries or damages caused by a motor vehicle used by the carrier in the conduct of his transportation business where, at the time the injury or damage is caused, the motor vehicle is being operated in disregard or violation of any of the conditions of the certificate, or of any of the rules or regulations of the Board, or of any law of the state relating to the equipment or operation of motor vehicles?

In our opinion the phrase, "motor vehicles operated by the insured *pursuant* to a Certificate of Public Convenience and Necessity" does not mean only motor vehicles which are being operated in strict conformity with the laws of the state and the rules and regulations of the Board (see Old Colony Trust Co. v. Commissioner, 301 US 379, 383, 81 L ed 1169, 1173, 57 S Ct 813); but it means any and all motor vehicles used by the carrier in carrying on the transportation work which the certificate authorizes him to carry on, and which in the absence of the certificate he had no authority to carry on. The statute authorizes the Board of Railroad Commissioners to grant a Certificate of Public Convenience and Necessity to common motor carriers only on the condition that the Board shall "require the owner or operator *to first procure* either liability and property damage insurance or a surety bond to be approved by the Commission as to form, sufficiency and surety thereof," written by a company authorized to write such insurance in this state, in an amount to be designated by the Commission, and "the conditions of this liability insurance or surety bond shall be such as to guarantee the payment of any loss or damage to property, or death or injury to persons, resulting from the negligence of such carrier." The statute does not permit the conditions of the bond to be such as to include only certain types of actionable negligence and to exclude others.

If the insurance policy were so conditioned as to exempt the insurer from liability for payment of a final judgment for injury or damage resulting from the actionable negligence of the carrier in cases where the negligence consisted of failure on the

part of the owner or operator of the motor vehicle to comply with the laws of the state or the regulations of the Board relating to the operation of motor vehicles, then the policy would clearly fail to furnish the protection which the statute requires; for it is a well-known fact that probably in most cases brought to recover damages for personal injuries or damage to property alleged to have been caused by the negligence of the operator of a motor vehicle, the act of negligence charged involves, or may be predicated wholly upon, the violation or disregard of some provision of the law of the road, or the failure to have the vehicle properly equipped with the prescribed equipment, such as adequate lights and brakes. 42 CJ pp 894, 899, 921, 934, 941, 974, 1012, 1045.

Many of the rules and regulations of the Board of Railroad Commissioners relating to motor carriers are safety regulations intended to protect the public and others from damage and injury. Under the statute it is the duty of the Board of Railroad Commissioners to approve only a policy conditioned that the insurer agrees "to guarantee the payment of any loss or damage to property, or death or injury to persons, resulting from the negligence of the carrier"; and upon the rendition of final judgment for any such injury or damage, the insurer is made directly liable to the owner of the judgment for the full amount thereof not exceeding the amount of the policy.

The power of the Board of Railroad Commissioners to require an applicant for a Certificate of Public Convenience and Necessity, or a carrier to whom such certificate has been issued, to purchase liability insurance is necessarily limited to such vehicles as may be used in the transportation service over which the Board has supervision. Trinity Universal Ins. Co. v. Cunningham (CCA 8th) 107 F2d 857, 861; Hawkeye Casualty Co. v. Halferty (CCA 8th) 131 F2d 294, 298. See also Smith v. Republic Underwriters, 152 Kan 305, 307, 308, 103 P2d 858, 860. It goes without saying that the Board has no authority to require an applicant for, or the holder of, a Certificate of Public Convenience and Necessity to purchase and file with the Board a liability insurance policy covering motor vehicles which he

may use for purposes outside the operations covered by the certificates. The Board may require only that the applicant for, or the holder of, such certificate procure and file with the Board a policy or surety bond so conditioned as to "guarantee the payment of any loss or damage to property, or death or injury to persons, resulting from the negligence of such carrier" in the operation and use of motor vehicles that at the time the loss or damage or injury is inflicted are being used in carrying on the transportation business which the carrier is authorized to carry on under the certificate, and which he could not otherwise lawfully carry on. Trinity Universal Ins. Co. v. Cunningham (CCA 8th) 107 F2d 857, supra; Hawkeye Casualty Co. v. Halferty (CCA 8th) 131 F2d 294, supra; Smith v. Republic Underwriters, 152 Kan 305, 103 P2d 858, supra.

The defendant knew when it issued the policy that the procurement of such policy by Hedstrom and the filing thereof with the Board of Railroad Commissioners was a condition precedent to the issuance of a Certificate of Public Convenience and Necessity or to the renewal thereof; that Hedstrom could not and would not be permitted to carry on his transportation business unless he had procured and filed with the Board an insurance policy (or surety bond) covering any and all vehicles used by him in the transportation service over which the Board had supervision, and that the Board was not concerned with whether Hedstrom carried liability insurance covering motor vehicles owned or operated by him, while the same were being used for commercial, personal or social purposes outside the operations and transportation service authorized to be conducted by him by reason of the Certificate of Public Convenience and Necessity. Trinity Universal Ins. Co. v. Cunningham (CCA 8th) 107 F2d 857, 861; Hawkeye Casualty Co. v. Halferty (CCA 8th) 131 F2d 294, 298; Smith v. Republic Underwriters, 152 Kan 305, 307, 308, 103 P2d 858, 860.

The Certificate of Public Convenience and Necessity authorizes the carrier named therein to engage in certain transportation business and to transport for hire by motor vehicle persons or commodities along certain routes or within certain territory,

and the statute forbids any person to carry on such transportation for hire unless and until he has been granted the prescribed certificate. Hence, the reference in the endorsement to motor vehicles operated pursuant to a Certificate of Public Convenience and Necessity must have been intended to mean vehicles that at the time of injury or damage is inflicted are being operated by the carrier in carrying on the transportation activities which the certificate authorizes him to carry on, and which in the absence of such certificate he is forbidden to undertake. Trinity Universal Ins. Co. v. Cunningham (CCA 8th) 107 F2d 857, supra; Hawkeye Casualty Co. v. Halferty (CCA 8th) 131 F2d 294, supra. In other words, the term as used in the endorsement serves on the one hand to designate as the vehicles covered by the policy, any and all motor vehicles which, at the time the injury or damage is inflicted, are being used by the carrier in the transportation service over which the Board of Railroad Commissioners has supervision, and which the certificate authorizes the carrier to carry on; and serves on the other hand to exclude from the coverage of the policy any motor vehicle operated by the carrier which at the time the injury or loss is caused is not then being used in any transportation service over which the Board of Railroad Commissioners has supervision; but is at the time the injury or damage is inflicted being used for purposes or in operations outside of those covered and authorized by the certificate. Trinity Universal Ins. Co. v. Cunningham (F); and Hawkeye Casualty Co. v. Halferty (F) both supra; Smith v. Republic Underwriters 152 Kan 305, 103 P2d 858, supra.

Is the insurance contract, and the liability which the defendant assumed thereby, limited to the motor vehicle specifically described in the policy?

The question must be answered in the negative. It is true the statute does not require that a surety bond or insurance policy be given for an unlimited amount, and that the form of the bond or policy and the amount of the indemnity and the sufficiency of the surety or insurer is left for determination by the Board of Railroad Commissioners. But the statute never-

theless clearly and unequivocally provides that in every case an applicant for a certificate or permit to operate as a carrier must, as a condition precedent to the issuance and delivery to him or it of such certificate or permit, furnish and file with the Board a surety bond or insurance policy "to be approved by the Commission (Board of Railroad Commissioners) as to form, sufficiency and surety thereof" and written by a company authorized to do business in North Dakota. · The statute makes it the duty of the Board before approving a bond or insurance policy to require that "the conditions of liability insurance or surety bond shall be such as to guarantee the payment of any loss or damage to property, or death or injuries to persons, resulting from the negligence of such carrier." Hence, it is manifestly the duty of the Board of Railroad Commissioners to approve a surety bond or policy of insurance presented by or in behalf of a carrier only if such bond or policy is in such form, contains such conditions and stipulations, and the surety or insurer who executed the bond or policy are such as to assure that the legislative purpose thus declared will be carried out.

The Certificate of Public Convenience and Necessity does not identify or enumerate the vehicles to be operated by the carrier. It is in effect a general authorization to the carrier to engage in and carry on his business as a carrier within the limits prescribed by the certificate. An applicant to whom a certificate is granted is required to pay a stipulated fee and the certificate, unless revoked for cause, will remain in force until the next following April 15. At that time the certificate ceases to be in force unless renewed. A carrier of the type in question here is charged a fee of $40.00 for a Certificate of Public Convenience and Necessity, and in addition thereto is required to pay a minimum fee of $7.50 for each vehicle of $1\frac{1}{2}$ ton capacity or less, and an additional fee of $2.00 per ton or fraction thereof for vehicles having a larger capacity. For a renewal of the certificate such carrier is required to pay a fee of $25.00, and in addition thereto is charged a minimum fee of $5.00 for each vehicle of $1\frac{1}{2}$ ton capacity or less, and $2.00 for each additional ton or fraction thereof for vehicles having a larger capacity. A re-

newal certificate runs for one year, commencing April 15.

The rules and regulations adopted by the Board were intended to protect the public and to facilitate the orderly and safe conduct of the business by the carrier. The statutory requirement that the carrier must furnish a surety bond or liability insurance policy was primarily for the benefit of parties who sustain injuries to person or property as a result of the negligence of the carrier. As was said by the Supreme Court of Kansas in Dunn v. Jones, 143 Kan 218, 53 P2d 918, 921: "The purpose of the insurance is adequate protection to members of the public from negligent conduct of the motor vehicle operator, not simply protection to the negligent operator against judgments rendered against him, and what the policy must assure is recoverable compensation to a member of the public for injury to person and loss of, or injury to property."

The statute requires a surety bond or insurance policy to be given "to guarantee the payment of any loss or damage to property, or death or injury to persons, resulting from the negligence of the carrier." Liability on the part of the insurer is predicated upon the negligence of the carrier, that is, upon the failure of the carrier to perform a duty which he owes to the party who sustains injury.

It was only natural that the Board of Railroad Commissioners should adopt as a yardstick, in measuring the amount of insurance a carrier must furnish, the number of vehicles utilized by the carrier in carrying on his transportation business. But the fact that the Board requires a certain amount of insurance to be given by the carrier for each vehicle employed in the transportation business he is authorized to carry on does not show that the Board intended to restrict the coverage of the liability insurance policy to the specific vehicle or vehicles which are described in the policy. In the very nature of things a vehicle used in transportation may break down and it may become necessary to substitute some other vehicle to take over and carry the load to the point of destination. Unless this were permissible, shipments,—especially shipments of livestock,— might be exposed to extreme hardship and loss. The Board of

Railroad Commissioners has made no provision in its regulations for temporary substitution of all or parts of units utilized in carrying freight. But the regulations do not forbid such substitution, and according to the testimony of the director of auto transportation of the Board of Railroad Commissioners of North Dakota, the right to make such substitution when the necessity arises is recognized by the Board. He testified: "When a vehicle is broke down and the carriage of things have to be carried on, naturally the carrier is not always in a position to notify everybody interested that he is placing a new vehicle in service, or a substituted vehicle. We have no rule requiring that."

The provisions of an ordinary automobile liability insurance policy do not contain the stipulations or provide the coverage that is ordinarily required by the laws relating to motor carriers, and the practice has been adopted, in at least a number of the states, by the commissioners charged with the regulation of motor vehicle carriers to require certain endorsements or riders containing provisions, which will afford the insurance protection required by the law, to be attached to all policies furnished by carriers. The reported cases show that it has been the practice in a number of the states to insert in such indorsements or riders provisions waiving descriptions of the vehicles, and making the insurance applicable to any and all vehicles operated by the carrier in the conduct of his business under the certificate or permit. Dekat v. American Auto. F. Ins. Co. 146 Kan 955, 73 P2d 1080; Trinity Universal Ins. Co. v. Cunningham (CCA 8th) 107 F2d 857; Commercial Standard Ins. Co. v. McKissack (Tex Civ App) 153 SW2d 997; Fidelity & C. Co. v. Jacks, 231 Ala 394, 165 So 242; Hindel v. State Farm Mut. Auto Ins. Co. (CCA 7th) 97 F2d 777; Duffy v. Oregon Auto. Ins. Co. 142 Or 698, 21 P2d 211; Liberty Mut. Ins. Co. v. McDonald (CCA 6th) 97 F2d 497.

In this state the Board of Railroad Commissioners has required that the insurer must attach to and make a part of the insurance policy a certain endorsement wherein the insurer

makes certain specific agreements. The endorsement attached to the policy in this case specifically stipulated as follows:

"In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby *waives a description of the motor vehicles to be insured thereunder, and agrees to pay, within the limits of the policy any final judgment* for personal injury, including death, resulting therefrom, and the loss or damage to property, including property of passengers while carried on the motor vehicle for shipment or in transit, *caused by any and all motor vehicles operated by the insured Pursuant to a Certificate of Public Convenience and Necessity or Permit* issued to the insured by the Board of Railroad Commissioners of North Dakota in accordance with Chapter 164, Session Laws of 1933 as amended by Chapter 182 of the Session Laws of 1935. . . .

*Nothing contained in this policy shall relieve the Company from liability for accidents caused by motor vehicles operated by the insured pursuant to the Certificate of Public Convenience and Necessity or Permit;* nor shall cancellation of this policy take effect unless fifteen days notice in writing shall have first been given to the Board of Railroad Commissioners of North Dakota at its office in Bismarck, North Dakota, said fifteen days notice to commence from the date the notice is actually received by said Commission.

*Nothing contained in the policy or any endorsement thereon nor the violation of any of the provisions of the policy or of any endorsement thereon by the insured shall relieve the Company of liability thereunder or the payment of any final judgment."*

These provisions conflict with the provisions in the policy form proper which restrict the liability of the insurer to loss caused by the particular vehicle described in the policy. Manifestly, the provisions in the endorsement must control. Note: 30 LRA 637 et seq.; Duffy v. Oregon Auto. Ins. Co. 142 Or 698, 21 P2d 211, supra. By the stipulations in the endorsement the defendant waived "a description of the motor vehicles to be insured" under the policy, and it agreed "to pay within the limits of the policy any final judgment for personal injury . . . caused

*by any and all motor vehicles operated by the insured pursuant to a Certificate of Public Convenience and Necessity . . .* is-sued to the insured by the Board of Railroad Commissioners of North Dakota." If there had been any intention that the li-ability of the insurer should apply only to loss caused by the vehicle described in the policy, then these provisions would have been wholly unnecessary. The only purpose they could serve was to provide liability where injury was caused by vehi-cles other than those described in the policy. Smith v. Repub-lic Underwriters, 152 Kan 305, 307, 103 P2d 858, 860; Dekat v. American Auto. F. Ins. Co. 146 Kan 955, 958, 959, 73 P2d 1080, 1082.

The provisions of the endorsement prescribed by the Board of Railroad Commissioners in this state are quite similar to those which have been adopted by commissions having super-vision of motor carriers in other states, and it has generally been held that under such provisions the policy covers not only the vehicle or vehicles specifically described in the policy but covers any and all vehicles operated by the carrier in the trans-action of the business which he is authorized to carry on. Dekat v. American Auto. F. Ins. Co. (Kan) supra; Travelers Mut. Casualty Co. v. Herman (CCA 8th) 116 F2d 151; Trinity Uni-versal Ins. Co. v. Cunningham (CCA 8th) 107 F2d 857, supra; Fidelity & C. Co. v. Jacks, 231 Ala 394, 165 So 242, supra; Com-mercial Standard Ins. Co. v. McKissack (Tex Civ App) 153 SW2d 997, supra; Hindel v. State Farm Mut. Auto. Ins. Co. (CCA 7th) 97 F2d 777, supra; Hipp v. Prudential Casualty & Surety Co. 60 SD 300, 244 NW 346. See also Duffy v. Oregon Auto. Ins. Co. 142 Or 698, 21 P2d 211, supra; Sills v. Schneider, 197 Wash 659, 86 P2d 203; Commercial Standard Ins. Co. v. Foster (DC) 31 F Supp 873; Liberty Mut. Ins. Co. v. McDonald (CCA 6th) 97 F2d 497, supra.

Dekat v. American Auto. F. Ins. Co. 146 Kan 955, 73 P2d 1080, supra, arose out of a collision between a truck operated by one Talbot, a motor carrier of property, and an automobile in which the plaintiff, Dekat, was riding. The plaintiff sus-tained personal injuries and brought suit. Talbot operated a

truck as a motor carrier of property under a certificate or license issued by the commission in Kansas, which was authorized to supervise and regulate motor carriers. On January 25, 1935, he purchased a public liability insurance policy from the American Automobile Insurance Company, which policy provided a maximum liability for one accident of $5,000.00. This policy covered a Ford V-8 truck. On April 19, 1935, he purchased a public liability insurance policy from the Western Casualty and Surety Company. It also provided a maximum liability for one accident of $5,000.00. The vehicle described in that policy was a Chevrolet truck. The accident occurred on July 11, 1935. The collision was with the Chevrolet truck. The Kansas statute relating to supervision, regulation and licensing of motor carriers involved in the Dekat case was in many respects quite similar to the laws of this state which are involved here. The Kansas statute provided: "No certificate or license shall be issued by the public service commission to any . . . motor carrier of property . . . until after such applicant shall have filed with, and the same shall have been approved by the public service commission, a liability insurance policy in some insurance company or association authorized to transact business in this state, in such reasonable sum as the commission may deem necessary to adequately protect the interests of the public with due regard to the number of persons and amount of property involved, which liability insurance shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such carrier." Kan Gen Stat 1935, 66–1, 128. (146 Kan p 957, 73 P2d at p 1081).

The Kansas commission in performance of its duties under the law adopted, among others, a rule which required that all liability insurance policies filed with the commission by an applicant for a certificate or license to operate as a motor carrier of property must have attached thereto a rider or endorsement containing the following stipulation:

"In consideration of the premium stated in the policy to which this endorsement is attached, the company hereby waives

a description of the motor vehicles to be insured hereunder and agrees to pay any final judgment for personal injury, including death, resulting therefrom, and loss of or damage to property or baggage (not including property usually designated as cargo), other than the assured's caused by any and all motor vehicles operated by the assured pursuant to the Certificate of Public Convenience and Necessity issued by the State Corporation Commission of Kansas within the limits set forth in the policy." (146 Kan at p 957, 73 P2d at p 1081.)

This endorsement or rider was attached to each of the liability insurance policies. The plaintiff, Dekat, recovered judgment for $6,826.65 against Talbot, the carrier, and both insurance companies.

The American Automobile Insurance Co. contended "that the only insurance coverage must be found in the policy which specifically described the truck involved in the accident," namely, the policy of the Western Casualty and Surety Company. 146 Kan at p 958, 73 P2d at p 1082. In disposing of this contention, the Supreme Court of Kansas said:

"This contention, if sound, means that plaintiff, the injured member of the public, for whose adequate protection the insurance requirement was enacted and the rider required, is denied full protection. Does the contract permit that conclusion and is that result in harmony with the intention of the lawmakers?

That the purpose of Gen. Stat. 1935, 66–1, 128, was adequate protection of the public interest cannot be doubted. It says so in express language. Upon what ground, then, is the American relieved of responsibility? Does the fact the Chevrolet truck, owned and operated by the assured, was not described in the American policy absolve that company from liability? Does its contract answer the question? It is clear the rider was attached to its policy pursuant to the adequate-protection provision of the statute. No license to operate a truck under the certificate of public convenience and necessity could have been obtained by the insured unless the rider had been attached to the policy. The first part of the rider clearly indicates that all parties to

the contract, namely, the insured, the public utilities commission, and the insurance company, contemplated the assured might possibly or even probably operate other motor vehicles than the one specifically described in its policy. In order to adequately protect the interests of the public, the public utilities commission desired to make it clear the insurer would be liable for injuries occasioned by the negligent operation of motor vehicles by the assured, although such vehicles were not specifically described in the policy. The American was therefore required to waive and it did expressly waive the necessity for a particular description of such other vehicle or vehicles which were to be covered by its policy. In other words, if no particular vehicle had been described in the American policy at all, the contract would have covered all motor vehicles operated by Talbot, the assured, under his certificate of necessity and convenience. Does the fact that one vehicle was described in the American policy restrict the liability of the American to injuries resulting from a collision with the one vehicle particularly described in its policy? We think not. It seems to us the terms of the rider, when construed in their entirety and together with the manifest purpose of Gen Stat 1935, 66-1, 128, compel the conclusion we have reached. Otherwise a further provision contained in the rider becomes meaningless. The American not only agreed to waive the description of other vehicles operated by the assured; the rider further provides:

'The company . . . agrees to pay any final judgment for personal injury, including death, . . . caused by *any and all motor vehicles operated by the assured pursuant to the certificate of public convenience and necessity* issued by the Kansas state corporation commission of Kansas, *within the limits set forth in the policy.'* (Italics inserted.)

It will be observed the language does not limit the liability of the American to vehicles operated by the assured and described in the policy. It expressly extends the liability to other vehicles operated by the assured, and the insurer agrees to pay any final judgment for personal injuries caused by any and all motor vehicles operated by the assured pursuant to his certi-

ficate of convenience and necessity within the limits set forth in its policy. That limit is $5,000 for one accident. . . .

The contract constituted not only an express waiver of the particular description of other motor vehicles covered by the policy, but specifically provided that injury caused by such vehicles would be paid by the insured on any final judgment to the extent of the full limit set forth in the policy."

The holding of the Supreme Court of Kansas in Dekat v. American Auto. F. Ins. Co. (Kan) supra, and the language employed by the court in its decision in the case are applicable here. In this case the defendant, Insurance Company, issued an insurance policy which it caused to be presented to the Board of Railroad Commissioners. The issuance of such policy and the filing thereof with such Board was a condition precedent to the renewal, and the continuance in force, of the Certificate of Public Convenience and Necessity held by Hedstrom. In preparing its contract the defendant utilized an ordinary automobile liability policy form; but it attached to this form and specifically made a part of the policy a written rider or endorsement, modifying and extending the provisions of the policy, so as to present an insurance policy with such coverage as the Board of Railroad Commissioners had required must be given. The defendant was under no compulsion to make this contract. It entered into it voluntarily. In the written endorsement or rider which it attached to and made a part of the policy it stated that in consideration of the premium stated in the policy "the Company hereby waives a description of the motor vehicles to be insured hereunder, and agrees to pay, within the limits of the policy, any final judgment for personal injury, including death, resulting therefrom, and loss or damage to property . . . caused by any and all motor vehicles operated by the insured *pursuant* to a Certificate of Public Convenience and Necessity or Permit issued to the insured by the Board of Railroad Commissioners of North Dakota."

And that "Nothing contained in the policy or any endorsement thereon nor the violation of any of the provisions of the policy or of any endorsement thereon by the insured shall re-

lieve the Company of liability thereunder or the payment of any final judgment."

The plaintiff in this case obtained a final judgment against Hedstrom for personal injuries sustained in a collision upon a public highway in this state between a car in which the plaintiff was riding and a truck operated by Hedstrom's employee in transporting livestock for hire, for several consignors, to West Fargo in this state. Four persons testified and identified consignments of livestock by them to West Fargo which were being so transported on the truck at the time of the accident. The injuries sustained by the plaintiff were caused by the negligence of the driver of the truck. Under the evidence there can be no doubt that the truck which caused plaintiff's injuries, for which judgment was rendered in her favor, was at the time the injuries were inflicted being operated in the business or service authorized by the certificate. The truck was being operated in the territory within which, and transporting such property as, the Certificate of Public Convenience and Necessity authorized.

The Legislature provided that as a condition precedent to the issuance or renewal of a Certificate of Public Convenience and Necessity the carrier must procure either a surety bond, or liability insurance whereby the insurer specifically agreed "to guarantee the payment of any loss or damage to property, or death or injury to persons, resulting from the negligence of such carrier." The Board of Railroad Commissioners, in prescribing the form of an insurance policy to carry into effect the statutory requirement, provided that every insurance policy furnished by a carrier must have attached thereto, and made part thereof, a written endorsement wherein and whereby the insurer specifically agrees that such insurer "waives a description of the motor vehicles to be insured thereunder," and "agrees to pay, within the limits of the policy, any final judgment for personal injury, . . . caused by any and all motor vehicles operated by the insured pursuant to the Certificate of Public Convenience and Necessity issued to the insured." In

this case the defendant issued such policy with such endorsement attached thereto and made a part of the policy.

The plaintiff was injured by a motor vehicle operated by Hedstrom in carrying on such transportation service, and because of the negligence of the driver of such motor vehicle. She brought suit and final judgment was rendered in her favor for such personal injuries. Under its contract the defendant agreed to pay such judgment; and under the statute it became directly liable to the plaintiff, the owner of the judgment, for the full amount thereof,—such judgment not exceeding the amount of the policy.

The judgment of the district court is affirmed.

BURR, MORRIS, BURKE, and NUESSLE, JJ., concur.