Argued March 29; affirmed April 25, 1933

# DUFFY *v.* OREGON AUTOMOBILE INSURANCE CO.

### (21 P. (2d) 211)

*W. H. Maguire,* of Portland (Dey, Hampson & Nelson and R. R. Morris, all of Portland, on the brief) for appellant.

*Randall S. Jones,* of Portland (E. L. McDougal, of Portland, on the brief) for respondent.

CAMPBELL, J. This is an action on an insurance policy of a common carrier to recover a sum of money to be applied on the satisfaction of a judgment against the insured in said policy.

During the year 1927, U. B. Willis was engaged in the motor carrier business as an "Anywhere For Hire" carrier, under a permit issued by the Public Service Commission of Oregon. On April 15, 1927, defendant herein executed and delivered to U. B. Willis its policy of insurance No. 5330, covering a Hupmobile touring car used in his business of motor carrier. In consideration of the premium mentioned therein, it insured the said U. B. Willis for a term of one year against loss arising from the legal liability of the insured for bodily injuries accidentally sustained by others, including death resulting therefrom, on account of any accident due to the ownership, maintenance or use of the insured's automobile not exceeding the limit set forth in the "schedule of insurance". The schedule fixed the amount of liability for the death of one person at $5,000. The policy contained the usual condition regarding the liability of the insurer notwithstanding the bankruptcy of the insured, and the usual exceptions found in an insurance policy covering an automobile for private use, such as disclaiming liability for accidental injuries occurring while the machine would be engaged in a race; loss occasioned by insurrection or invasion; while it is used as a public livery conveyance carrying passengers; if it should be covered by other insurance; if the policy be assigned without the insurer's consent or if the insured parts with all insurable interest. It also provides that the insurer shall

give notice in writing of any accident causing damage; shall give notice of any claim; shall forward immediately all summons or process in actions against the insured for damages resulting from operation of the car; that the insured will not voluntarily assume liability or settle any claim or interfere with any negotiations for settlement or with any legal proceedings. It contains many other conditions and provisions not necessary to be considered herein. To this policy was attached a rider containing the following provisions:

"The policy to which this endorsement is attached is written in pursuance of and is to be construed in accordance with Chapter 380, General Laws of Oregon, 1925, and acts amendatory thereof and supplemental thereto and the rules and regulations of the Public Service Commission of Oregon adopted thereunder. In consideration of the premium stated in the policy to which this endorsement is attached, the insurer hereby waives the description of the motor vehicle or motor vehicles to be insured hereunder and agrees to make compensation, within the limits set out in the following schedule, for injury to, and/or death of persons and loss of or damage to property resulting from the operation of or in connection with motor vehicles and/or trailers and/or other equipment operated by or for the assured, provided said carrier is legally liable therefor.

         *      *      *      *      *

"For the purpose of this endorsement the term 'operations' shall be construed to include said motor vehicles, trailers and/or other equipment, whether the same be in motion or otherwise, and whether attached or detached.

"All conditions and provisions of this policy and any statements or agreements contained therein or endorsed thereon in conflict with this rider are by agreement of all parties hereto held null and void in so far as they are in conflict herewith.

"This policy cannot be cancelled by the insurer or by the insured without first giving thirty (30) days written notice to the insured and the Public Service Commission of Oregon. It is understood and agreed that the operating equipment covered by this policy is being operated under a permit issued by the Public Service Commission of the State of Oregon and that in the event of cancellation of said permit, this policy shall thereupon become null and void without further notice".

On May 21st, U. B. Willis, the insured in the foregoing policy, exchanged his Hupmobile touring car for a Hupmobile sedan in Portland. On his sedan, he placed his "Anywhere For Hire" state license plates and started to drive it to his home and place of business in Tillamook. While driving through Washington county, he collided with an automobile in which J. F. Duffy was riding, causing the death of the said J. F. Duffy. Defendant was thereupon notified of such accident and investigated the same and then and there disclaimed any liability under the aforesaid policy, giving as its reason that the Hupmobile sedan was not covered by the policy No. 5330. Thereafter action was brought by plaintiff, as administrator of the estate of said J. F. Duffy, deceased, for damages by reason of the death of decedent, against the insured who employed his own attorney and failed to forward the summons and complaint to defendant herein, nor did he call upon defendant to defend said action.

To the complaint in said action, the insured filed an answer which later, on stipulation, was withdrawn and judgment entered by default for the sum of $7,500. The insured failed to pay the judgment and thereafter became a voluntary bankrupt. There is no property of the insured on which execution could be levied. The facts, this far, are all admitted.

Defendant, in a separate answer and defense, alleges that the Hupmobile sedan, the car which insured was driving when the collision occurred, was not the one described in, nor was it covered by the insurance policy No. 5330. Defendant also alleges, as a defense, the failure of the insured to notify it of the action against him, and his failure to forward process, and his stipulation withdrawing his answer in said action.

These allegations were denied in the reply.

There are other allegations in the pleadings which we do not deem material to a correct determination of the questions involved herein.

The cause was submitted to a jury which returned a verdict in favor of plaintiff in the sum of $5,000, the full amount of the policy coverage. Defendant appeals.

It will be observed that defendant does not allege that the insured was not legally liable for the damages assessed in the action against the insured.

The real question presented by the record in this case is, was the Hupmobile sedan, driven by the insured at the time of the accident, covered by the policy No. 5330?

The answer to this question depends upon whether the injury resulted from "the operation of, or in connection with, the motor vehicle" of the insured. It is admitted that the insured, at the time of the accident, had a legal permit to operate an "Anywhere For Hire" car. It is also admitted that the execution and filing of insurance policy No. 5330 with the Public Service Commission of Oregon was a condition precedent to the granting of the permit. The record further discloses that the insured at the time of the accident was the owner of but one car, the one in which he was riding; that he had not nor did he intend to abandon the business for which he was granted the permit.

The cases cited by appellant on the question of coverage are not in point.

In *Caines et al. v. Wheeler,* 207 Ky. 237 (268 S. W. 1098), Caines operated a jitney bus, and, in order to get a license, had to file a bond in the sum of $1,000. The bond he filed was a personal one. It was conditioned that the insured,

"* * * shall pay to the city of Ashland and to any and all persons any and all damages that may be inflicted by him upon it or them by the wrongful, negligent, or unlawful use or operation of a jitney bus under the license issued to the said J. D. Caines".

This is entirely different from the condition in the policy in the instant case.

In *Hemphill v. Romano,* 233 S. W. 125 (C. C. A. Tex.), the court said:

"The sole contention * * * being that the judgment was contrary to the evidence in that it undisputably appeared that Romano's driver caused the collision by swerving his car to the left and into appellant's car".

The court's remarks therein on the coverage of the bond were pure dicta and unnecessary to the determination of the case.

In *Motor Car Indemnity Exchange v. Lilienthal,* 229 S. W. 703 (C. C. A. Tex.), the obligation of the bond was,

"This bond is executed to cover the operation of a car licensed under county No. 9754 and jitney No. 169, and being the same car heretofore described and no other, and it is expressly stipulated that no other vehicle will be substituted and operated under said numbers * * *."

Plaintiff therein had judgment against the insurer. The court reversed the judgment because there was no evidence to show that the car which caused the injury

was the one described in the bond. The other cases cited by counsel on this point are distinguished in *Whitlock v. United States Inter-Insurance Ass'n,* 138 Or. 383 (6 P. (2d) 1088).

"Such number plates shall be made of enameled metal of such size, form and arrangement as shall be determined by the secretary of state, and shall contain the distinctive number assigned to the vehicle and in addition the letters 'O R E' and the year for which such license is issued". Oregon Code 1930, § 55-114.

By virtue of the authority so vested, the secretary of state arranged the license plates for the year 1927, so that motor vehicles used for different purposes would have a distinguishing mark thereon. He therefore prescribed that on motor busses the number on the license plates would be preceded by the letter "B". This is the form of license plates that the insured testified to having equipped the Hupmobile sedan with. The law in effect, at the time the insured traded his touring car for the sedan that caused the damage, defined an "Anywhere For Hire" car as a motor bus.

"The term 'motor bus' shall mean every motor vehicle designed and/or used for carrying passengers and their personal baggage for compensation". General Laws of Oregon, 1925, Chapter 327, § 1, sub-§ 8.

■■ The insured had done everything required by law to make the sedan comply in every respect with an "Anywhere For Hire" car, except paint the letters "O. P. S. C. Permit No.—", on a conspicuous place on the vehicle, and while the failure to do so might render him subject to a fine it would not release the bond. The evidence clearly shows that the sedan was substituted for the touring car and was intended to be used for the purpose of carrying on the business for which the carrier had obtained the permit. The insured admits

that on May 21st, before starting for Tillamook, he went around to some of the prominent hotels in Portland to see if he could find anyone who wished personal transportation to Tillamook. Of course, he now says that if he had found anyone he intended to take them merely as his guest, but that would be using the car in his business. We are of the opinion that the pleadings and the evidence show that the Hupmobile sedan was sufficiently identified and used "in connection with motor vehicles operated by, or for the assured". *Whitlock v. United States Inter-Insurance Co.*, supra.

It will be observed that the law requires the motor carrier to furnish a bond, not for his own use and benefit but to adequately protect the interests of the public.

"The commission shall, in granting any permit, require the motor carrier receiving the same to file with the commission a liability and property damage insurance policy * * *. Said policies of insurance to be in such penal sum as the commission may deem necessary to adequately protect the interests of the public, having due regard to the number of persons and amount of property involved, which policies of insurance shall bind the obligors or the surety thereunder to make compensation for injuries to or death of persons * * * resulting from the operations of, or in connection with, motor vehicles * * * of such motor carrier, provided said carrier is legally liable therefor * * *." Oregon Code 1930, § 55-1317.

■ The rider itself provides that it shall be construed in accordance with chapter 380, General Laws of Oregon, 1925. By the rider, the insurer waived description of the vehicle. The rider supersedes all conditions and exceptions, except "the legal liability of the carrier" and that defense is neither plead nor raised in the instant case.

■ It will be further observed that the law does not permit the insurer nor the insured to cancel the bond without first giving 30 days' notice to the Public Service Commission. If the contention made by defendant as to the defense of lack of notice of the original action, or failure to forward summons and process, or assuming liability by the insured, etc., would be permitted to prevail, then either the insurer or the insured could avoid the liability on the bond. Thus accomplish indirectly what the law does not permit to be done directly.

The other assignments of error are all connected with the matter above discussed and passed upon. They relate to the instructions given and instructions requested and not given covering the defenses plead by defendant. The instructions given, to which exceptions were taken, were more favorable to defendant than the facts justified. The instructions requested and not given, under our view of the case, were all properly refused.

The judgment of the lower court will be and hereby is affirmed.