· BARRELLA, Own Use and Use of CALVERT FIRE
INS. CO., et ux. *v.* STEWART

[No. 230, September Term, 1961.]

*Decided April 18, 1962.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Melvin J. Sykes* for appellants.

*Frederick J. Green, Jr.,* with whom were *Lord, Whip, Coughlan & Green* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

This appeal questions the grounds relied on by the trial court in striking out certain enrolled judgments in favor of plaintiffs in a personal injury action. In addition, we are asked to decide whether or not the defenses of lack of notice and absence of opportunity to defend are available to the defendant's insurer in a subsequent attachment case wherein plaintiffs sought to collect their judgments from the insurer under a policy issued to the defendant as proof of financial responsibility.

The appellants, Pasquale Joseph Barrella and his wife, Mary (plaintiffs below), sustained personal injuries and other damages when their automobile was struck in the rear by a car driven by the appellee, James Edward Stewart (defendant below) on November 30, 1957. Stewart's driver's license, which had been revoked permanently in 1954 after a conviction of drunken driving, had been reissued to him only a month prior to the accident after he had obtained from the National Mutual Insurance Company an insurance policy issued as evidence of financial responsibility, as required by Art. 66½, § 118, Code (1957). The requisite SR 22 certificate of financial responsibility, based on the policy, was filed by National Mutual with the Department of Motor Vehicles, on the strength of which Stewart's license was reinstated. Stewart's application to National Mutual, however, had concealed the drunken driving conviction, and instead stated that the reason such a policy was required was that he had been in an accident for which he had not been covered by liability insurance. After Stewart reported his collision with the Barrellas to the insurer, it checked his driving record, discovered the conviction, and cancelled the policy.

The Barrellas' counsel began settlement negotiations with the insurance company. When friction developed between counsel and insurer, the Barrellas filed suit against Stewart in the Superior Court of Baltimore City on March 11, 1958. However, several attempts to obtain service upon Stewart proved futile and, after a report that he had left town, further efforts to serve him were abandoned for the time being after

June, 1958. National Mutual also attempted to contact Stewart, with identical letters on February 25 and April 11, 1958, to instruct him to submit to the insurer "any correspondence, demands, notice of suit". The first letter was not returned but the second came back with the notation "Moved—left no address." The company made no further attempt to contact Stewart or counsel for appellants, although the file was kept open and periodically reviewed.

In January, 1960, efforts to serve Stewart were renewed by counsel for appellants. The record shows that he first sent a deputy sheriff to attempt service on Stewart in care of National Mutual at its place of business on January 18. Service was refused by the company. On January 21, 1960, Stewart finally was served at his then place of residence, and although he denied at the trial that he had ever been served, the trial court found that service had been made.

It is not disputed that Stewart failed to notify the insurance company of the pending suit, and that no further efforts were made by counsel for appellants to apprise the company of the situation, other than the attempt to serve Stewart in care of the insurance company. Stewart filed no plea and made no appearance, and on March 31, 1960, appellants obtained a judgment by default. On May 5, 1960, an inquisition was held before Judge Harlan. Although appellants had elected to have the case tried before a jury at the time suit was filed, at the inquisition the matter was submitted to the court for determination without a jury. No written waiver of a jury trial was executed or filed. Judge Harlan, who appeared as a witness in the later proceedings to strike the judgments, testified that there had been some discussion at the inquisition as to whether there could be an informal waiver of a jury trial and that he allowed it after satisfying himself that it could be done without a writing, under the appropriate rules of the Supreme Bench. On May 10, 1960, the judgments in question were entered against Stewart in favor of the Barrellas. On June 13, 1960, appellants ordered a writ of *fieri facias* which was returned *nulla bona* by the sheriff at appellants' request. On July 26, 1960, appellants filed a written withdrawal of their original election for a jury trial, and the docket entries

reveal that an order granting leave to withdraw was signed by Judge Harlan *nunc pro tunc* as of May 5, 1960, the date of the inquisition.

In the meantime, on June 24, 1960, appellants issued an attachment against National Mutual on their judgments. The insurer denied liability on the grounds that it had not received notice from the insured or from appellants' counsel of the suit, service on the defendant, the default judgment and inquisition, and the final judgments, and that it had thus been denied an opportunity to defend the suit. In addition, in October, 1960, National Mutual, in the name of the appellee, Stewart, filed a series of motions to strike the judgments in the instant case, contending that the judgments were procured by irregularity stemming from: (1) the alleged lack of notice of the suit and subsequent proceedings; (2) the fact that no written waiver of a jury trial was filed by appellants until July 26, 1960; and (3) alleged lack of personal service upon the insured, Stewart.

The issues raised in the attachment case and the instant proceedings to strike the judgments were tried together before Judge Carter. The trial judge found that Stewart had in fact been served personally. However, the court granted appellee's other motions based upon the first and second contentions, and the judgments were stricken. In view of its holding, the trial court found it unnecessary to answer questions raised in the attachment case, the principal one of which was the effect that lack of notice would have on the liability of an insurer who has issued a policy as proof of financial responsibility and filed an SR 22 certificate. The trial court did intimate, however, that the same defenses would also have been valid in the attachment proceeding had it been necessary for the trial court to rule thereon.

In this appeal from the order striking the judgments, appellants contend that the trial court erred as to both grounds upon which it based that order. They also seek to have us rule on the validity of the insurer's defenses of lack of notice and of opportunity to defend as they pertain to the attachment case, although no order was signed therein, since it was tried together with the instant case and would entail further delay and expensive litigation, including a possible second appeal,

should we remand the case at bar without deciding that issue. We shall answer all questions posed. Maryland Rule 885.

## I

The first contention of appellants, that the trial court erred in striking the enrolled judgments against appellee Stewart under Maryland Rule 625 for "irregularity" based on the failure of appellants to file a written waiver of jury trial at or before the inquisition, is well founded.

The Supreme Bench rules, upon which the trial judge based his conclusion that a written waiver was required, read in part:

"Rule 536. Jury Trial—Election of.

* * *

"Such election [of a jury trial] shall not be withdrawn, except by written consent of all the parties, filed in the case, *except where a judgment by default has been entered.*

"Rule 730—Judgments by Default.

* * *

"If either party shall have prayed a jury trial * * * [b]y the joint written consent of the parties or their attorneys of record, filed in the case, a jury trial may be waived and the damages assessed by the court. *Also, if the plaintiff shall have prayed a jury trial, and the defendant shall not have entered an appearance by attorney, or in proper person, the plaintiff may waive such jury trial and damages may be assessed by the court.*" (Emphasis supplied.)

It would appear from a close reading of these rules that there may be good ground for appellant's argument that no written waiver is necessary in the case of a judgment by default where defendant has not appeared. In our view, however, even if the rules were interpreted to require a written waiver of jury trial in such circumstances, no prejudice to the defendant's cause has been shown which would warrant setting aside the judgments under Maryland Rule 625, requiring a showing of "fraud, mistake, or irregularity". Rule 625, and the Supreme Bench rules, must be read in light of

Maryland Rule 651, which states in part: "A judgment shall not be arrested or set aside for any matter of mere form * * *."

Under the Supreme Bench rules cited above appellants had the absolute right to waive a jury trial, since there was no appearance for the defendant, the provision being obviously framed for the benefit of a plaintiff in such a case. The only question raised is as to the form in which the waiver was made. The fact that it was made orally in no way affected any substantial rights of appellee as defendant below, nor did it result in an incomplete record since the docket entries clearly reflected the fact that the case was tried without a jury. The cases cited by appellee to support his argument concerning a defendant's right to a jury trial are not applicable in the context of the instant case. We think the method by which the waiver was made was a formal matter and not a substantial irregularity involving any fundamental injustice warranting suspension of the policy which accords stability and repose to enrolled judgments. Appellee's further contention that the damages as assessed by the trial court might not have been so great had they been assessed by a jury is conjectural and without merit. Errors in the inquisition for assessment of damages after default, not amounting to fraud, mistake or irregularity, are not grounds for setting a judgment aside. *Green v. Hamilton*, 16 Md. 317 (1860), and *Mailhouse v. Inloes*, 18 Md. 328 (1862).

## II

Appellants maintain that the trial court also erred in striking out the judgments on the grounds that National Mutual had not been notified of the pending suit by the appellants and that appellants had not fully apprised Judge Harlan of the fact that insurance was involved and of the previous negotiations. Appellants cite the case of *Sanders v. Chavis*, 90 S. E. 2d 749 (N. C. 1956), to support their theory that the judgments against Stewart could not be set aside to protect the equities of National Mutual, since it was not a party to the case in which the judgments were obtained and in which the motions to strike, now before us, were filed by Stewart.

If we assume, without deciding, that it was proper for the trial court to consider *in the judgment case* whether the equity

of National Mutual was violated by irregularity resulting from lack of notice to it, we nevertheless find error in the conclusion reached by the court. The record, in our view, amply supports a finding that National Mutual had *actual notice* of the suit and sufficient time to investigate and defend the action against Stewart.

The insurance company was well aware of the accident through telephoned and written reports to it by Stewart and through negotiations with appellants' attorney. It was also acutely cognizant of the unreliability of Stewart as manifested by his fraudulent application for insurance and the futile attempts to stay in contact with him and obtain a minimum of cooperation. That the company did not consider the case closed after the stormy and unsuccessful negotiations with appellants' counsel is evidenced by the fact that its file on the case was kept open and periodically reviewed by it. With this background, when appellants' counsel renewed his efforts to serve Stewart, in January, 1960, by attempting service upon the agents of the insurance company of the summons directed to Stewart and a copy of the declaration showing the Barrellas' names as plaintiffs and Stewart's name as defendant, this was sufficient, along with the other factors cited, to give the insurer notice that suit had been filed and reason to be on its guard as to further proceedings in the case. A rudimentary investigation would have sufficed to ascertain whether Stewart had been served and whether a trial had been scheduled. Stewart was in fact served three days later and, of course, failed to notify National Mutual of the pending action. However, his neglect in not forwarding the suit papers, a course of action which the company by now should have expected, and the lack of any further notice on the part of appellants cannot be said to have prejudiced the insurer's cause where, as we have found, it had sufficiently been put on notice that a suit had been filed. There was then ample time for the insurer to make an investigation and determine the exact status of the claim so as to protect its rights. See 8 *Appleman, Insurance Law and Practice,* § 4741, p. 69, and cf. *Jameson v. Farmers Mutual Automobile Ins. Co.,* 309 P. 2d 394 (Kan. 1957); *Royal Indemnity Co. v. Morris,* 37 F. 2d 90 (C. A. 9, 1929); *Mor-*

*ris v. Bender,* 177 Atl. 776 (Pa. 1935). In view of our finding that the insurer had actual notice of the suit, appellee's claim that appellants should have notified Judge Harlan of the fact of insurance is without force.

## III

The last contention of appellants, that the insurer is precluded by the Maryland Motor Vehicle Financial Responsibility Act, Art. 66½, §§ 116-149, Code (1957), from raising the defense of lack of notice to relieve itself of liability to pay the judgments against Stewart, is answered in effect by our finding under the second contention, that the insurer did in fact have actual notice of the action filed against Stewart. We may note in passing, however, that this Court has affirmed the public liability nature of § 131 (a) (6) (F) of the act, the so-called "absolute liability" clause, in a discussion of that section by Chief Judge Brune for the Court in *Citizens Co. v. Allied Co.,* 217 Md. 494, 144 A. 2d 73 (1958). See also *Casualty Co. v. Hinds,* 180 Md. 676, 26 A. 2d 761 (1942). Because it is injured members of the public who are sought to be protected under such an act and such a policy when issued, the policies are generally construed liberally to accomplish their purpose. 7 *Appleman, Insurance Law and Practice,* § 4295. Ordinary defenses, such as lack of notice, as in this case, or other forms of non-cooperation by the insured, have been held unavailable to an insurer under such a policy. See *Sanders v. Travelers Indemnity Company,* 144 F. Supp. 742 (D.C. M.D. N.C. 1956); *Royal Indemnity Co. v. Olmstead,* 193 F. 2d 451 (C. A. 9, 1951), 31 A.L.R. 2d 635; *Merchants Indemnity Corporation v. Peterson,* 113 F. 2d 4 (C. A. 3, 1940); Anno. 31 A.L.R. 2d 645; 7 *Appleman, op. cit., supra,* § 4297.

For the reasons stated, the order of the trial court striking the judgments in favor of appellants must be reversed. Under our findings in this case, the defenses of lack of notice and of opportunity to defend are not available to National Mutual in the attachment case.

> *Order reversed and stricken judgment reinstated, costs to be paid by appellee.*