NATIONAL INDEMNITY COMPANY *v.* SIMMONS, TO OWN USE AND USE OF EMMCO INSURANCE CO., STATE OF MARYLAND, USE OF GEORGE, ETC., ET AL.

[No. 47, September Term, 1962.]

*Decided December 12, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT, MARBURY and SYBERT, JJ.

*Thomas G. Andrew,* with whom were *Rollins, Smalkin, Weston & Andrews* on the brief, for appellant.

*Milton I. Vogelhut* and *Herbert Burgunder, Jr.,* with whom were *H. LaRue Parke* and *F. Gray Goudy* on the brief, for appellees.

SYBERT, J., delivered the opinion of the Court.

In these three appeals in one record from judgments entered in garnishment proceedings, an insurance company, which had issued an automobile public liability policy to its insured as proof of responsibility under the Maryland Motor Vehicle Financial Responsibility Act, contends that the trial court erred in holding it liable for the payment of three judgments obtained against the insured without the insurer's knowledge.

On December 24, 1958, appellees (plaintiffs below) sustained injuries and damages as the result of an automobile accident caused by the negligence of Leon Fulmer. At the time of the accident there was in effect a policy of liability insurance issued by the appellant, National Indemnity Insurance Company (defendant below), to Fulmer, and a certificate known as an SR-22 had been filed with the Department of Motor Vehicles whereby National certified that the policy had been issued pursuant to the provisions of the Motor Vehicle Financial Responsibility Act, Code (1957 and 1962 Cum. Supp.), Art. 66½, Secs. 116-149.

Following unsuccessful negotiations between the plaintiffs' attorneys and agents of the insurer, the plaintiffs filed suits against Fulmer in the Circuit Court for Baltimore County, and service was had on him on August 8, 1960. Fulmer failed to forward the suit papers to National as required by the conditions of the policy, and no pleas were filed. On October 21, 1960, default judgments were entered, and on December 13, 1960, damages were assessed. Appellant had no knowledge of the suits and resulting judgments until receipt of a letter dated March 20, 1961, from one of the attorneys for the plaintiffs. Upon refusal of National to pay the judgments, garnishment proceedings were filed and judgments entered against National, from which these appeals were taken.

The issue involves construction of applicable portions of the Financial Responsibility Act. The Act provides that after receipt of a report of a motor vehicle accident within the State which has resulted in bodily injury or death or property damage above a stated amount, the Department of Motor Ve-

hicles shall suspend the license of the operator and all vehicle registrations of the owner, unless the operator or owner, or both, shall deposit security to cover any judgment resulting from the accident and give proof of continuing financial responsibility for the future. Under Sec. 131 of the Act, insurance issued as proof of financial responsibility is made subject to certain rigorous provisions, one of which is set forth in subsec. 131 (a) (6) (F), as follows:

> "That the *liability of the insurance carrier shall become absolute whenever loss or damage included in such policy occurs,* and the satisfaction by the insured person of a final judgment for such loss or damage shall not be a condition precedent to the right or obligation of the carrier to make payment on account of such loss or damage; provided that no suit shall be brought against the insurance carrier until thirty (30) days after the entry of a final judgment against the insured person for such loss or damage." (Emphasis supplied.)

The italicized portion of the subsection is the root of the instant dispute. The appellant contends that there is nothing in the Act which requires a finding that an insurance carrier is absolutely liable for a judgment obtained against its insured without notice to it and opportunity to defend, and that therefore the Act should not be so interpreted. To hold otherwise, it says, would amount to a denial of due process. Contrariwise, it is the position of the appellees that, under the terms and intent of the statute, immediately upon the happening of an accident an insurer which issued a policy to meet the requirement of financial responsibility becomes liable to the injured party for such damages as may subsequently be awarded him, and that such insurer is precluded from invoking, as against a judgment obtained by the injured party against the insured, defenses based upon the insured's conduct, such as failure to give notice or otherwise cooperate. The trial court agreed with the appellees.

This Court has recognized that the intention of the Legisla-

ture in passing the present Motor Vehicle Financial Responsibility Act and its predecessor acts was to protect the public from the reckless operation of motor vehicles by irresponsible drivers and to assure the ability of operators and owners against whom judgments may be entered on account of negligent driving to respond in damages to persons who may suffer as the result of such negligence. *Casualty Co. v. Hinds*, 180 Md. 676, 679, 26 A. 2d 761 (1942); *Citizens Co. v. Allied Co.*, 217 Md. 494, 503, 504, 144 A. 2d 73 (1958). See also 48 Columbia L. Rev. 799, 800 (1948). The questions here are whether the construction of the Act urged by the appellant would be consistent with this legislative objective, and if not, whether imposition of liability upon the insurer despite the failure of the insured to notify it of the suit would be violative of its constitutional rights.

Appellant maintains that the public would in no way lose the protection intended if the plaintiff in a suit against the insured were required to give notice to the insurer before default judgment is taken or inquisition to assess damages is held. In support of its argument it cites Sec. 131 (b) (5) of the Act, which permits a policy issued in compliance with the statute to contain any agreement, provision or stipulation which is not in conflict with or contrary to the provisions of the Act and not otherwise contrary to law. The requirement of notice before the entering of a judgment, it contends, is not a provision which is either contrary to the Act or otherwise contrary to law, and therefore, it says, the liability of the insurance carrier should become absolute only when the compensation for the injury or damage is agreed upon or established in legal proceedings of which it had notice.

We have not as yet had occasion to decide the precise question as to whether the Act is contravened by a policy provision releasing an insurer from liability for a judgment obtained against its insured in an action of which it had no notice. However, there are a number of cases that indicate the light in which policies issued pursuant to the Act must be viewed.

It is clear that a policy provision contrary to the Act is void. Sec. 131 (a) (6) (E); *Citizens Co. v. Allied Co., supra* (at

503 of 217 Md.). The case of *Casualty Co. v. Hinds, supra,* dealt with the Motor Vehicle Financial Responsibility Act of 1933, as amended in 1935 and 1939, pertaining to liability insurance for commercial vehicles, which had the same remedial purpose—protection of the public—as the Act now under consideration. In that case the insurer sought to avoid payment of a judgment entered against its insured, for whom it had filed a certificate of financial responsibility, basing its stand on two exclusionary provisions in the policy, namely, that it did not cover the vehicle while being driven by a minor, or while rented to another. The negligent driver of the insured's truck was 18 years of age at the time of the accident. After observing that such statutes are remedial, and should be liberally construed against the insurer to accomplish their purpose, the Court said (at pp. 679-680 of 180 Md.) :

> "* * * It is, therefore, well established that when an insurance policy has been issued in pursuance of the requirement of a statute, which forbids the operation of a motor vehicle until good and sufficient security has been given, the court should construe the statute and the policy together in the light of the legislative purpose. * * * If there is a conflict between any provision of a policy and the statute, the statute is paramount, and it is the duty of the court to hold the provision in the policy illegal and ineffective. * * * So, where an insurance policy has been issued to the owner of a commercial vehicle for the purpose of enabling him to comply with the terms of the statute, the provisions of the statute enter into and become a part of the policy, and the statute supersedes any provision in the policy repugnant to the statute. * * *"

The Court held the insurer liable, in spite of the exclusions in the policy, stating in conclusion (at p. 682 of 180 Md.) :

> "* * * [A]n insurer and a motor vehicle owner cannot be allowed to frustrate the will of the Legislature by means of exclusions contrary to the purpose

of the statute and deprive injured persons of the protection which the Legislature intended to provide."

This Court has referred to Sec. 131 (a) (6) (F) of the Act as the "absolute liability" clause. *Citizens Co. v. Allied Co., supra* (503 of 217 Md.). In the course of considering that section on a point not involved here, Chief Judge Brune said for the Court (at p. 504) :

> "Our view that the 'absolute liability' under Section 131 (a) (6) (F) is to the members of the public who have suffered by reason of the insured's action is reinforced by the fact that the provision for absolute liability is coupled directly with the clause stating that satisfaction of a judgment by the insured person is not a condition precedent to the obligation of the insurer to make payment to the injured party. In other words, the insolvency or financial irresponsibility of the insured does not release the insurer from liability to injured third parties. * * * The public liability nature of the policy is further emphasized by the provisions of Section 131 (d) prohibiting the cancellation by the insured and the insurer of a policy offered as proof of financial responsibility under the Act after the insured person has become involved in an accident resulting in personal injury or property damage to others."

In *Barrella, Etc. v. Stewart,* 228 Md. 378, 179 A. 2d 886 (1962), as here, we were asked to rule that an insurer which had issued a policy as proof of financial responsibility was not liable for a judgment obtained against its insured, on the ground that the insured had not notified the insurer of the suit. Although we found that the insurer had received actual notice of the action by reason of an attempted service of the suit papers upon the insured in care of the insurer, we noted (at p. 386 of 228 Md.), by way of *dictum,* "that this Court has affirmed the public liability nature of § 131 (a) (6) (F) of the Act, the so-called 'absolute liability' clause," in *Citizens Co. v. Allied Co., supra,* and cited *Casualty Co. v. Hinds, supra.*

In *Fid. & Cas. Co. v. McConnaughy,* 228 Md. 1, 179 A. 2d 117 (1962), involving an automobile liability policy not issued as proof of financial responsibility, the Court, in commenting on policy defenses, stated (at p. 8 of 228 Md.) :

> "Although an insurance company issuing a policy to meet the requirement of 'proof of financial responsibility' is by Sec. 131 (a) (6) (F) precluded from setting up, as against a judgment-creditor of the insured, *defenses that arise out of the insured's conduct (such as failure to cooperate),* Sec. 131 (a) (6) (F) does not apply to those insurance policies which * * * are not issued as 'proof of financial responsibility,' * * *." (Emphasis supplied.)

The principles enunciated in the cases cited were applied in *Inland Mutual Insurance Co. v. Stallings,* 263 F. 2d 852 (C.A. 4, 1959), involving a suit by an insurer for a declaratory judgment to determine its obligation to its insured and persons making claims against him for injuries sustained in an automobile collision, under an automobile liability policy issued pursuant to the Maryland Motor Vehicle Financial Responsibility Law. Chief Judge Sobeloff, in affirming the decision of Chief Judge Thomsen below, wrote (at p. 857) :

> "The scheme of the legislation *precludes any action or inaction by the insured or the insurer,* together or separately, to lessen the public protection prescribed by the statute. Where the insurer, by its certificate, induces the issuance of an unrestricted driver's license, it should be and is required to respond in damages for the insured's operation of any motor vehicle irrespective of ownership and *irrespective of any conduct of the insured.*" (Emphasis supplied.)

In *Royal Indemnity Co. v. Olmstead,* 193 F. 2d 451, 31 A.L.R. 2d 635 (C.A. 9, 1951), the court affirmed the liability of an insurer under a policy required by ordinance to be taken out by those engaged in the car rental business, despite the failure of the policy holder and the negligent lessee of one of the cars to give notice of an accident, and of the policy

holder to cooperate with the insurance company, as required by the conditions of the policy. The court said (at p. 453) :

> "* * * As a general rule, unless a policy can be construed as creating an independent right of action in the injured party, his right to recover, being derivative, normally is subject to any defense the company may have against the insured. * * * An exception to the general rule has been made in situations where the insurance policy was issued to satisfy the requirements of a statute having as its purpose the protection of the public. Under such circumstances the beneficial purpose of compulsory insurance would be thwarted in the event the insurer be permitted technical defenses under the policy relating to conditions wholly outside the ability of the injured person to secure performance of."

Cases on the subject are collected in an annotation in 31 A.L.R. 2d, beginning at page 646. At page 647, Sec. 2, the text writer states :

> "While there are exceptions to the rule, more especially in view of the language of particular statutes, most of the cases involving the question recognize that failure to give notice of an accident, or other lack of co-operation on the part of the insured, does not constitute a defense to an action by an injured member of the public to recover from the insurer, where the policy or bond was procured in compliance with a general compulsory liability or financial responsibility insurance statute, such statutes being for the benefit of members of the public, and not of the insured. * * *"

The tenor of the authorities cited makes it obvious, we think, that the legislative intent underlying the Financial Responsibility Law was to provide funds to meet the needs of innocent victims of automobile accidents, and not to afford protection to financially irresponsible motorists. Under the theory of such statutes, there is no sound reason why the

victim's rights should depend upon the acts or omissions of the very person who caused the injury, or of the insurer whose certificate made it possible for him to obtain the license to operate the automobile involved in the accident. Lack of compliance by the insured with the policy provision requiring the insured to notify the insurance carrier of a plaintiff's suit cannot be held to afford the insurer a defense precluding collection from it of the plaintiff's judgment against the insured, in the absence of fraud or collusion between the insured and the plaintiff to withhold notice of the suit from the insurer (neither of which is claimed or intimated in the instant case). To hold otherwise would often virtually nullify the statute and render illusory the protection seemingly provided by it. We cannot believe that the Legislature envisioned that result —so adverse to the purpose of the statute—when it enacted this legislation to protect the public. See *Sanders v. Travelers Indemnity Co.*, 144 Fed. Supp. 742 (D.C.N.D. 1956); *Bonfils v. Pacific Automobile Insurance Company*, 331 P. 2d 766 (Cal. 1958); *Ott v. American Fidelity & Casualty Co.*, 159 S. E. 635 (S. C. 1931); 7 Appleman, *Insurance Law and Practice*, § 4297; 6 Blashfield, *Cyclopedia of Automobile Law and Practice* (Perm. ed.), § 4080, pp. 146 *et seq.*

We therefore conclude that the wording in Sec. 131 (a) (6) (F) of the Act, stating that the insurer's liability "shall become absolute whenever loss or damage included in such policy occurs", means that liability under policies issued pursuant to the Act is determinable as of the time of the accident, and that defenses based upon lack of notice or other cooperation by the insured are not available to the insurer. Our conclusion is strengthened by the facts mentioned in the quotation appearing earlier in this opinion from *Citizens Co. v. Allied Co., supra,* as well as by the facts that higher premiums are charged (as stipulated in the instant case) for policies issued under the Act than for ordinary automobile liability policies, and that the Legislature has not seen fit to make provision for notice of suit by the plaintiff to the insurer upon default by the insured, as some States have done (see, for example, Revised Statutes of Maine, Chap. 22, Sec. 80 II E). The differential in premiums affords a greater income to off-

set the increased burden assumed under the Act. It is also noted that the carrier is not without recourse in the event of the insured's failing to notify it of an accident or otherwise breaching the conditions of the contract in that it may in such cases proceed against the insured for reimbursement. In the instant case this was specifically provided for as one of the conditions of the policy. Having full knowledge of the type of driver likely to require the filing of an SR-22 form, and having agreed that the policy issued was to comply with the provisions of the Act, the company may not complain that the obligation imposed is greater than the one assumed.

Appellant contends that a construction of the Act as not requiring an insurance carrier to be given notice of a suit as a condition precedent to its liability under its policy would amount to a denial of due process of law. It cites the case of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U. S. 306, 70 S. Ct. 652 (1950), and other authorities for the proposition that any party whose rights are to be affected by judicial proceedings is entitled to notice. The argument, however, overlooks the fact that the rights herein involved must be examined in the context of both the insurance policy and the Financial Responsibility Act. Since the insurer knew or was chargeable with knowledge of the terms of the statute it is presumed to issue its policies in compliance with the requirements thereof. *Casualty Co. v. Hinds, supra* (at p. 678 of 180 Md.). Therefore, the policy will be construed in terms of the Act whenever the two conflict to the prejudice of the public. See *Inland Mutual Ins. Co. v. Stallings, supra; Fidelity & Casualty Co. v. Mahon,* 170 Md. 573, 185 Atl. 330 (1936) ; *Saffore v. Atlantic Cas. Ins. Co.,* 121 A. 2d 543 (N. J. 1956). Although the precise question raised here is novel in Maryland, there is considerable authority in other jurisdictions as to the constitutionality of holding a carrier liable on policies issued under financial responsibility acts despite a complete lack of notice.

In the case of *Kruger v. California Highway Indemnity Exchange,* 258 Pac. 602 (Cal. 1927), the court permitted an injured party to recover from an insurance company under a

policy of automobile indemnity insurance, the amount of a judgment which had been entered against the insured without the insurer's knowledge. In that policy the insurer guaranteed the payment of any final judgment rendered against the insured, who was a jitney bus owner required to have such a policy by city ordinance. After recognizing the right of the municipality to prescribe the nature of the security given by those operating vehicles for hire on the public streets, the court held that the company had *voluntarily* assumed the risk of the policy and therefore could not later avoid its obligation thereunder under the guise of protecting its constitutional rights. In *Swain v. Nationwide Mutual Insurance Company,* 116 S. E. 2d 482 (N.C. 1960), involving the Financial Responsibility Act of North Carolina, it was decided that violations of the provisions of a policy requiring the insured promptly to notify the insurer of any suit and to cooperate in defending it, were not sufficient to relieve the insurer of its liability to pay injured persons. In answering the constitutional arguments advanced the court reasoned that the insurer had voluntarily assumed the risk under a statutory provision that no violation of the policy should defeat or avoid it with respect to persons injured by the insured.

The case of *Vance v. Burke,* 166 N. E. 761 (Mass. 1929), cited in both *Kruger* and *Swain,* is the leading case holding that the contractual obligation assumed by the insurer precludes the later assertion of constitutional objection. In *Vance,* a suit on a policy issued under the compulsory insurance law of Massachusetts, an insurance carrier sought to avoid payment of a judgment obtained against its insured by an injured party. The carrier claimed it had received no notice of the suit, as required by the policy, until after the judgment was entered. In affirming a judgment against the insurer, Chief Justice Rugg noted that the contract provided that "* * * no violation of this policy shall operate to defeat or avoid this policy as to bar recovery", and said (at p. 762 of 166 N. E.) :

> "We are of the opinion that no constitutional question of this nature is open to the insurer on this record. It issued the policy. That is admitted. So far

as appears on this record, that action was entirely voluntary on the part of the insurer. Its assumption of the liability here sought to be enforced was optional, not compulsory. * * * Having entered into a contract freely, the insurer cannot be heard to complain of its terms. One cannot assume an obligation of his own free will and then successfully assail its constitutionality."

See also *Duffy v. Oregon Automobile Ins. Co.*, 21 P. 2d 211 (Ore. 1933); *Warecki v. United States Fidelity & Guaranty Co.*, 170 N. E. 49 (Mass. 1930); *United States Casualty Co. v. Breese*, 153 N.E. 206 (Ohio 1925).

In these and other cases the courts have held that one may not avoid his contractual obligation once assumed. It is well recognized that even constitutional rights may be waived voluntarily. *Pierce Oil Corporation v. Phoenix Refining Co.*, 259 U. S. 125, 42 S. Ct. 440 (1922). Although each of the cases cited above involves either on the one hand a contractual or a statutory provision that the insured's violation of the terms of the policy should not affect the insurer's liability, or on the other hand a guarantee by the carrier to pay judgments obtained against the insured, we feel that the *instant case* may be analogized with those authorities. The insurance company is presumed to be fully cognizant that "[t]he purpose of legislation of this nature is to assure the ability of motor vehicle owners, against whom judgments may be entered on account of negligent driving, to respond in damages to persons who may suffer as a result of such negligence, and consequently to help in reducing the appalling toll of human life and suffering resulting from the reckless operation of motor vehicles." *Casualty Co. v. Hinds, supra* (at p. 679 of 180 Md.). Having now incurred liability under its voluntarily assumed obligation, the carrier cannot avoid that obligation by claiming invasion of constitutional rights. We may add that existing interpretations by this and other courts of the absolute nature of the carrier's liability under our Act and others similar thereto preclude any reasonable argument that the company was not fully aware of the risk involved in issuing this

policy. For the reasons advanced we feel that the constitutional argument is without merit.

We point out that the authorities cited and the conclusions reached here apply only to cases involving policies required under the Motor Vehicle Financial Responsibility Act of Maryland. As to failure to give notice or otherwise cooperate with the insurer, under standard automobile liability policies, see, for example, *Fid. & Cas. Co. v. McConnaughy, supra,* 228 Md. 1 (1962); and *Lewis v. Commercial Cas. Ins. Co.,* 142 Md. 472, 121 Atl. 259 (1923).

*Judgments affirmed; costs to be paid by the appellant.*