DAVE OSTREM IMPORTS, INC. d/b/a Dave Ostrem Mitsubishi and Universal Underwriters Insurance Company, Appellees,

v.

GLOBE AMERICAN CASUALTY/GRE INSURANCE GROUP, Appellant.

No. 97–316.

Supreme Court of Iowa.

Nov. 25, 1998.

John D. Stonebraker, Davenport, for appellant.

R. Jeffrey Lewis and Kimberly Pieters Knoshaug of Lewis, Webster, Johnson, Van Winkle & DeVolder, Des Moines, for appellees.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and CADY, JJ.

CARTER, Justice.

Defendant, Globe American Casualty/GRE Insurance Group (Globe), is a liability insurance carrier that certified its contract with a suspended driver, Cari Knock, as proof of Knock's financial responsibility pursuant to Iowa Code section 321A.18(1) (1995). Globe is appealing a judgment against it in a direct action proceeding by plaintiff, Dave Ostrem Imports, Inc. (Ostrem). The judgment against Globe was based on a default judgment that Ostrem had obtained against Knock in a proceeding of which Globe had no notice or opportunity to defend. Globe urges that it is a violation of due process to apply Iowa Code section 321A.21(6)(a) so as to void its policy defense that its insured failed to provide it with notice of Ostrem's claim. For reasons that we discuss below, we affirm the judgment of the district court.

In June 1995 a vehicle owned by Ostrem was struck by a vehicle owned by David Morse and driven with Morse's consent by Knock. At the time of the accident, Knock had a policy of liability insurance issued by Globe and certified by Globe as proof of Knock's financial responsibility pursuant to Iowa Code section 321A.18(1). The policy included a provision requiring the insured to notify Globe of any accident triggering coverage and to promptly forward to Globe any suit papers that the insured might receive. The policy provided that a failure to do this would be a basis for denying coverage.

In October 1995 Ostrem commenced an action against Knock and Morse to recover for damage to his motor vehicle. Although proper service was obtained against both defendants, neither appeared to defend against the claim. A default judgment was entered against both Knock and Morse in the amount of $16,270.46 for property damage suffered by Ostrem as a result of the accident. Os-

trem, who has been unable to satisfy the judgment against Knock and Morse, brought the present direct-action claim against Globe pursuant to Iowa Code section 516.1, alleging that an execution against Globe's insured, Knock, had been returned unsatisfied.

Globe's answer contained an affirmative defense, asserting that Knock's coverage was voided as a result of her failure to give Globe notice of Ostrem's legal action. Ostrem subsequently moved for summary judgment, asserting that Globe was absolutely liable as a certifier of financial responsibility pursuant to Iowa Code section 321A.18(1). It urged that under section 321A.21(6)(a) policy violations may not be allowed to defeat the coverage otherwise provided. In its resistance to the motion for summary judgment, Globe asserted that, if section 321A.21(6)(a) permitted the imposition of liability upon an insurer that has not been given notice of the action and an opportunity to be heard, this would amount to a violation of due process of law in violation of the Fourteenth Amendment to the United States Constitution and article I, section 9 of the Iowa Constitution.

The district court granted Ostrem's motion for summary judgment. The court determined that Globe was bound to take notice of the absolute obligation created by its certification of Knock's financial responsibility as the result of section 321A.21(6)(a). The court held that it was not a violation of due process to require that the liability coverage certified as proof of financial responsibility not be subject to exclusions based on the conduct of the insured. The court entered a judgment against Globe for the policy limits of $15,000.

**I. *Statutory Interpretation.***

The statute upon which the district court relied to preclude the application of Globe's policy defenses reads as follows:

Every motor vehicle liability policy [certified as proof of financial responsibility] shall be subject to the following provisions which need not be contained therein:

*a.* The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy

may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on the insured's behalf and no violation of said policy shall defeat or void said policy.

Iowa Code § 321A.21(6)(a). In a leading treatise on insurance, the author states:

[T]he word "absolute," as used in a motor vehicle responsibility act providing that the liability of the insurer under the policy shall become absolute upon occurrence of the accident, means that there shall be no defenses to liability of the insurer based upon any statement made by, or on behalf of, the insured or upon exclusions, conditions, terms, or language contained in the policy.

7 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 104:45 (3d ed.1996).

■ In interpreting those provisions in financial responsibility statutes that limit policy defenses available to an insurer, courts have been cognizant of the fact that these statutes are designed to preclude a lessening of the protection intended to be afforded the motoring public by such laws. As one federal court has stated:

Where the insurer, by its certificate, induces the issuance of an unrestricted driver's license, it should be and is required to respond in damages for the insured's operation of any motor vehicle irrespective of ownership and irrespective of any conduct of the insured.

*Inland Mut. Ins. Co. v. Stallings*, 263 F.2d 852, 857 (4th Cir.1959) (applying Maryland law). Another federal court stated the matter as follows:

An exception to the general rule [that the injured party is subject to exclusions in the tortfeasor's liability policy] has been made in situations where the insurance policy was issued to satisfy the requirements of a statute having as its purpose the protection of the public. Under such circumstances the beneficial purpose of compulsory insurance would be thwarted in the event the insurer be permitted technical defenses under the policy relating to conditions wholly outside the ability of the injured person to secure performance of.

*Royal Indem. Co. v. Olmstead*, 193 F.2d 451, 453 (9th Cir.1951) (applying California law).

We agree with the views expressed by the treatise writer and the federal court decisions that we have noted. It is the clearly expressed purpose of statutes like section 321A.21(6)(a) to preclude a lessening of the protection to the motoring public that financial responsibility laws are intended to provide. Other decisions that agree with this conclusion include *National Indemnity Co. v. Simmons*, 230 Md. 234, 186 A.2d 595, 600 (Md.1962), and *Swain v. Nationwide Mutual Insurance Co.*, 253 N.C. 120, 116 S.E.2d 482, 486–87 (N.C.1960).

## II. *The Due Process Challenge.*

■ Globe's due process argument, both in the district court and in this court, is limited to challenging those provisions of section 321A.21(6)(a) precluding consideration of policy defenses based on the conduct of the insured. If successful, this challenge would deny Ostrem the benefit of the posted security on which Knock's right to drive was conditioned. We are satisfied that this would be a clearly untenable result.

■ When, under Iowa law, a statute is applicable to a policy of insurance, the provisions of the statute enter into and form a part of the policy to the same extent as if the statutory language was actually written in the insurance contract. *American States Ins. Co. v. Tollari*, 362 N.W.2d 519, 521 (Iowa 1985); *Benzer v. Iowa Mut. Tornado Ins. Ass'n*, 216 N.W.2d 385, 388 (Iowa 1974). Consequently, the preclusion of policy defenses called for in section 321A.21(6)(a) is part of the contract that Globe freely entered into. The insurance industry is highly regulated and, as other courts have noted, there is no denial of due process in applying, as written, statutory requirements for insurance policies of which the insurer was bound to be aware in doing business in the state.

The point is well made in *Vance v. Burke*, 267 Mass. 394, 166 N.E. 761 (Mass.1929), in which the court stated:

We are of the opinion that no constitutional question of this nature is open to the insurer on this record. It issued the policy. That is admitted. So far as appears on this record, that action was entirely voluntary on the part of the insurer. Its assumption of the liability here sought to be enforced was optional, not compulsory.... Having entered into a contract freely, the insurer cannot be heard to complain of its terms. One cannot assume an obligation of his own free will and then successfully assail its constitutionality.

*Vance,* 166 N.E. at 762. Due process challenges to provisions similar to section 321A.21(6)(a) in situations in which the insurer had no notice of the underlying suit have been similarly rejected in *Kruger v. California Highway Indemnity Exchange,* 201 Cal. 672, 258 P. 602, 605 (Cal.1927), *Simmons,* 186 A.2d at 601, and *Swain,* 116 S.E.2d at 488.

Globe contends the state court decisions that we have just discussed cannot be reconciled with the more recently decided Supreme Court decision in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In the *Fuentes* case, the Court held that due process requires notice and opportunity for a judicial hearing before an unpaid seller of personal property may replevin same by court order, irrespective of whether an adequate bond has been furnished for the buyer's protection. The ·Court concluded that the sellers had not waived that due process right by contract.

We conclude that *Fuentes* may be distinguished from the present case in two critical aspects. First, as to the issue of waiving a right to hearing by entering into a contract, the Court in *Fuentes* found an absence of waiver by interpreting the agreement. It concluded that the waiver provision relied on by the seller was too vague to be accorded validity. In the present case, the statutory provision that must be incorporated into Globe's policy is unequivocally clear. Second, the right to notice that was at issue in *Fuentes* was the right of a party to a judicial proceeding in which that party's property was sought to be taken by court order. The lack of notice that Globe complains of related to the pendency of an action in which Globe was not a party. Globe was given notice and an opportunity to defend against the direct-action claim lodged against it under section 516.1.

 One court has held that a financial responsibility insurer's surety status as to its insured's obligation is not sufficient to give the insurer a due process right to notice of an action against the insured. *Sandoval v. Chenoweth,* 102 Ariz. 241, 428 P.2d 98, 102 (Ariz.1967). Even if we were to conclude that Globe's ultimate responsibility for any judgment entered against Knock would give Globe a due process right to be heard concerning the extent of Knock's liability, we are convinced that this right, if it exists, must be asserted as a challenge to the conclusive effect of the default judgment rather than as a basis for voiding the statutory preclusion against policy defenses.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**