**IN THE COURT OF APPEALS OF IOWA**

No. 22-1263
Filed June 7, 2023


**TIMMY LEE BRIGGS and MONICA MAE EVISON,**
    Plaintiffs-Appellants,

**vs.**

**FIRST CHICAGO INSURANCE COMPANY,**
    Defendant-Appellee.
_____


Appeal from the Iowa District Court for Polk County, David Porter, Judge.


Insured drivers denied coverage for property damage to a third party challenge the grant of summary judgment for the insurer. **REVERSED AND REMANDED WITH DIRECTIONS.**


Marc S. Harding and Joe Casey of Harding Law Office, Des Moines, for appellants.

Scott Wormsley of Lamson, Dugan & Murray, LLP, West Des Moines, for appellee.


Heard by Bower, C.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

Denied insurance coverage for an accident under their policy, Timmy Briggs and Monica Evison challenge the district court's interpretation of Iowa's motor vehicle financial responsibility law. The court granted summary judgment to their insurer, First Chicago Insurance Company, finding its refusal to pay under business-use policy exclusions did not thwart the "absolute" liability language in Iowa Code section 321A.21(6)(a) (2021). Briggs and Evison insist that when it comes to an injured third party, the insurer may not rely on those policy exclusions to circumvent the statute's purpose—to protect the motoring public. Trouble is, the injured third party did not bring this suit and did not join Briggs and Evison in seeking damages from First Chicago. Although First Chicago did not raise standing, we may do so on our own motion. *See Rieff v. Evans*, 630 N.W.2d 278, 285 (Iowa 2001). But we decline to determine that issue for the first time on appeal. Instead, we reverse the grant of summary judgment as premature and remand for the district court to determine whether Briggs and Evison have standing to bring this lawsuit.

## I. Facts and Prior Proceedings

First Chicago issued Briggs an insurance policy for his 2004 Dodge Grand Caravan. The policy covered up to $20,000 per person for bodily injury, up to $40,000 per bodily-injury accident, and up to $15,000 in property damage per accident as required by Iowa Code section 321A.21(2)(b).[1] The policy listed

---

[1] The policy listed twenty-eight exclusions. If one of these exclusions applied, the policy stated that First Chicago did not have to provide liability coverage and had "no duty to settle or defend a claim or lawsuit."

Evison as a covered driver. One morning Evison was using Briggs's Grand Caravan to deliver newspapers when she hit a parked Mediacom van. Both vehicles sustained damage. And police cited Evison for failing to maintain control of her vehicle.

After that collision, the CEI Group—a fleet management company representing Mediacom—wrote to Evison demanding a loss amount of $6697. But when Briggs and Evison filed their insurance claim to pay for that damage, First Chicago denied coverage—citing two policy exclusions for "business use" of the vehicle.[2] The pair sued First Chicago, claiming those exclusions violated Iowa Code section 321A.21(6)(a) and seeking the $6697 in damages owed to Mediacom. Before answering the petition, First Chicago moved to dismiss. The company argued that the petition failed to state a claim upon which relief could be granted because the "narrow" exclusions satisfied Iowa's minimum financial liability requirements. The district court denied First Chicago's motion, finding "a question of fact whether the breadth of the exclusions thwart the intent of section 321A.21 by lessening insurance protection to the public."

After this denial, both sides moved for summary judgment. The district court ruled for First Chicago, finding that section 321A.21(6)(a) "does not require carriers

---

[2] The first exclusion related to damages "arising out of the ownership, maintenance or operation of any vehicle while it is being used in a delivery-related business." The policy defined "delivery-related business" to include using a car for "pickup or delivery or return from a pick-up of delivery of persons, products, documents, newspapers, or food." The second exclusion was for "the business-related use of an auto, unless we have so agreed and charged an additional premium." The policy defined "business" to mean "any full or part-time profession, occupation, trade, business or commercial enterprise."

to provide coverage for all damages, regardless of circumstances." Briggs and Evison now appeal.

## II. Scope and Standard of Review

If we could reach the merits, we would review the grant of summary judgment for correction of legal error. *Breese v. City of Burlington*, 945 N.W.2d 12, 17 (Iowa 2020). "Summary judgment is appropriate only when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019). We view the record in the light most favorable to the nonmoving party—in this case, Briggs and Evison. *See Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018). "When the facts are undisputed, we reverse only if the district court misapplied the law." *Iowa Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001).

## III. Analysis

Briggs and Evison urge that First Chicago's coverage exclusions conflict with the Iowa's motor vehicle financial responsibility law. At issue is this provision on the "absolute" liability of the insurance carrier:

> 6. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:
> a. The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on the insured's behalf and no violation of said policy shall defeat or void said policy.

Iowa Code § 321A.21(6)(a).

Twenty-five years ago, our supreme court interpreted this absolute-liability language. *See Dave Ostrem Imports, Inc. v. Globe Am. Cas./GRE Ins. Grp.*, 586 N.W.2d 366 (Iowa 1998).[3]  In that case, "a vehicle owned by Ostrem was struck by a vehicle owned by David Morse." *Id.* at 367.  When Ostrem could not satisfy its default judgment against Morse, it sued Morse's insurer, Globe America. *Id.* But Globe asserted that Morse's coverage was voided because the driver failed to give proper notice of the accident. *Id.*  Ostrem moved for summary judgment, "asserting that Globe was absolutely liable as a certifier of financial responsibility pursuant to Iowa Code section 321A.18(1)."  The district court agreed that under section 321A.21(6)(a), policy violations may not defeat the coverage otherwise provided. *Id.*  The supreme court affirmed.  In doing so, it noted that the "absolute" liability etched into the statute meant "there shall be no defenses to liability of the insurer based . . . upon exclusions, conditions, terms, or language contained in the policy." *Id.* at 368 (quoting 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 104:45 (3d ed.1996)).  The court emphasized: "It is the clearly expressed purpose of statutes like section 321A.21(6)(a) to preclude a lessening of the protection to the motoring public that financial responsibility laws are intended to provide." *Id.*

Briggs and Evison rely on *Ostrem*.  But in ruling for First Chicago, the district court distinguished that case, finding a distinction between pre-injury and post-

---

[3] That same year, our legislature enacted a statute requiring all motorists to carry minimum liability insurance.  *See* 1997 Iowa Acts ch. 139, § 2(1) (codified as amended at Iowa Code § 321.20B(1)(a)); *see also Baker v. Catlin Specialty Ins. Co.,* 769 F. Supp. 2d 1157, 1168 (N.D. Iowa 2011) (referring to this statute as a "compulsory financial liability coverage law").

injury exclusion clauses. In the district court's view: "Section 6(a) merely prevents insurance carriers from denying coverage based on actions taken *after* the injury occurs." On appeal, Briggs and Evison contend that the pre-injury and post-injury distinction finds no support in the language of section 321A.21(6)(a). And while *Ostrem* involved the insured's conduct after the accident, that opinion takes no position on the application of section 321A.21(6)(a) to policy exclusions that exist before the accident. *See id.*[4]

But before reaching the merits, we flag a foundational difference between this case and *Ostrem*: the party bringing suit. Ostrem was the injured third party, the intended beneficiary of the "absolute" liability protections in section 321A.21(6)(a). Meanwhile, Briggs is the policy holder and Evison is the insured driver and tortfeasor. As a leading treatise on insurance explains:

> The purpose of a Financial Responsibility Act is to furnish compensation for innocent persons and members of the general public who are injured by the negligent operation of automobiles and to protect them from financially irresponsible persons. The purpose is not generally to protect tortfeasor insureds against their own negligence.

7A Steven Plitt et al., *Couch on Insurance 3d* § 109:36 (Revised ed. 2013) (footnotes omitted). So as a threshold question, we must decide whether Briggs

---

[4] Indeed, this open question has led to diverging opinions in other states with compulsory financial liability coverage laws. *Compare Salamon v. Progressive Classic Ins. Co.*, 841 A.2d 858, 860 (Md. 2004) (finding delivery-related business policy exclusion invalid under Maryland's compulsory automobile insurance statute), *with Progressive Universal Ins. Co. of Illinois v. Liberty Mut. Fire Ins. Co.*, 828 N.E.2d 1175, 1186 (Ill. 2005) (finding a similar policy exclusion valid under Illinois's mandatory insurance law); *see also Proformance Ins. Co. v. Jones*, 887 A.2d 146, 154−55 (2005) (finding business-use policy exclusion invalid under New Jersey's compulsory insurance law and collecting cases from other states).

and Evison have standing to seek recovery of the $6697 in damages incurred by Mediacom.

Standing requires a party to have a sufficient stake in a controversy to obtain judicial resolution. *Birkhofer ex rel. Johannsen v. Brammeier*, 610 N.W.2d 844, 847 (Iowa 2000). Briggs and Evison must show (1) a specific, personal, and legal interest in the litigation, and (2) injury. *Rieff*, 630 N.W.2d at 284. When asked about standing at oral argument, counsel for Briggs and Evison asserted that his clients were injured because "the claim still exists for Mediacom to go ahead and come back after them." But without more of a record documenting Mediacom's interest in the litigation and their injury, we cannot determine whether Briggs and Evison have enough stake in the controversy to obtain a resolution of this legal challenge.

And then we still have to fashion a remedy. Even if we had evidence that Mediacom planned to collect its $6697 in damages from Briggs and Evison, and if we were persuaded that First Chicago was liable for those damages under section 321A.21(6)(a), we would still need to contend with Iowa Code section 321A.21(8). That provision recognizes that an insurance company may seek reimbursement from the insured for the absolute liability imposed by statute.[5] This provision shows how the legislature contemplated that, in certain situations, the insurance company would first compensate the innocent injured party and then bear the burden of

---

[5] Iowa Code section 321A.21(8) states: "Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of this chapter." The First Chicago policy issued to Briggs contains that reimbursement clause.

collecting from the insured. So under that statute and the related policy provision, First Chicago could seek reimbursement from Briggs and Evison for any recovery they receive on behalf of Mediacom. Such circuitous circumstances could inform the district court's decision on standing.

In closing, we reverse the merits ruling on the summary judgment motions as premature and remand for the district court to hold an evidentiary hearing to determine whether Briggs and Evison have standing to pursue this matter. *Cf. In re Est. of Bart*, No. 07-0464, 2007 WL 4553553, at *4 (Iowa Ct. App. Dec. 28, 2007) (remanding for further proceedings where the district court denied standing but we were "unable to determine" why the appellant lacked "standing to bring this claim" and the record was "not sufficient for us to determine whether this claim raises a justiciable issue"). If the court holds that the plaintiffs lack standing, it should dismiss their petition. If the court decides that they do have standing, the parties may file new summary judgment motions on the merits and incorporate any facts developed at the hearing.

**REVERSED AND REMANDED WITH DIRECTIONS.**